Ronald MULLINS and Anthony
Mullins, Appellants,

v.

COMMONWEALTH LIFE INSURANCE
COMPANY, Janet Vanover, Marcella
Shepherd, and Capital Enterprise Insurance Company, Appellees.

No. 90–SC–891–DG.

Supreme Court of Kentucky.

Sept. 3, 1992.

Albert B. McQueen, Lexington, for appellants.

David C. Stratton, Stratton, May & Hays, Pikeville, for appellees.

STEPHENS, Chief Justice.

Appellants, Ronald and Anthony Mullins, brought an action against Marcella Shepherd, Janet Vanover, Commonwealth Life Insurance Company, and Capital Enterprise Insurance Company, alleging that Shepherd and Vanover, as Commonwealth agents, negligently failed to advise the Mullinses as to the availability of underinsured motorist coverage and added reparation benefits. The Mullinses further alleged that Commonwealth and Capital violated KRS 367.170, the Consumer Protection Act, by failing to make underinsured motorist coverage (hereinafter referred to as UIM coverage); and added reparations benefits (hereinafter referred to as added RB); more readily available to its customers, and by failing to instruct its agents to advise customers about the availability of such coverage.

The trial court granted summary judgment in favor of the appellees and interpreted KRS 304.39–320 as requiring that UIM coverage must be offered "only upon request." So finding, the trial court further ruled that UIM coverage is optional, rather than mandatory. The Court of Appeals affirmed the trial court, and further held that allegations pertaining to Commonwealth's actions, pursuant to the Consumer Protection Act, KRS 367.170, even if true, fell outside the statute's understood parameters. After reviewing the record, we likewise affirm the trial court's grant of summary judgment in favor of the appellees.

The car insurance policy initially purchased by the Mullinses in April of 1984, exceeded statutorily dictated minimums, and consisted of the following coverage: liability of $50,000 per person, $100,000 per accident and $50,000 property damage; $10,000/$20,000 uninsured motorist limits, and $20,000 no-fault (representing the basic $10,000, plus $10,000 of added RB). While Shepherd, the insurance agent, could not recall anything concerning this transaction, Mrs. Mullins testified, at deposition, that she requested a "good" policy.

The Mullinses were temporarily without an automobile insurance policy once their initial 1984 policy lapsed, due to nonpayment in 1985. Coverage essentially identical to the previous policy was reissued in October of 1985, through insurance agent, Vanover, except that uninsured motorist coverage was increased to $50,000/$100,000, while no-fault was reduced to the statutory minimum of $10,000.

Mrs. Mullins, in deposition, testified that when she purchased the new policy, she instructed agent Vanover:

I told her (Vanover) I wanted as good of a policy as I could get on liability and no-

fault, everything I could get on it, because I couldn't afford full coverage.

Vanover, while unable to recollect Mrs. Mullins' "exact words," testified in deposition that the Mullinses indicated they wanted as inexpensive coverage as they could acquire, and that no specific policy coverage was discussed. Vanover further asserted that the policy sold to the Mullinses was a standard policy package set up within the office.

The record reveals that Mrs. Mullins read the policy, and made no further contact with Vanover regarding it. In deposition, Mrs. Mullins testified that she discovered the existence of UIM coverage when she called Vanover to find out if the Mullinses' policy included this coverage. Mrs. Mullins placed this call after discovering that medical expenses incurred by her son, Anthony, when he was injured in an automobile accident, would not be covered by the other driver's insurance.

Eric Tachau, a certified property and casualty underwriter, asserts in the record: (1) that both insurance agents failed to perform their professional duties because they did not explain to the insurance purchaser the availability, or desirability, of UIM coverage; and (2) that the Capital Holding Group of Insurance Companies failed to deal in good faith with their customers because their employees/agents were not instructed about UIM coverage, in order that information regarding the availability of such coverage could be conveyed to purchasers of their automobile insurance policies.

Appellants assert that summary judgment was improperly granted in favor of the appellees because two issues of material fact exist: (1) whether the appellees owed a duty of ordinary care to advise Mrs. Mullins on the availability of both UIM coverage and added RB; and (2) whether Capital Enterprise Insurance Company (hereinafter Capital); separately, and individually, violated the Consumer Protection Act, by failing to make UIM coverage and added no-fault protection more readily available to its customers, and by failing to instruct its agents to advise customers as to the availability of these insurance coverages.

■ Summary judgment is properly granted only when there is no genuine issue as to any material fact. *Steelvest, Inc. v. Scansteel Service Ctr.*, Ky., 807 S.W.2d 476 (1991). The burden of showing there is no genuine issue of material fact is upon the movant. *Id.* To determine whether the movant has met this burden, the court must review the record in the light most favorable to the party opposing the motion. *Id.*

The record, when viewed in the light most favorable to the appellants, does not present a genuine issue of material fact concerning the existence of an affirmative duty on the part of insurance agent, Vanover, to advise the Mullinses about the availability of UIM coverage, and added RB. Neither does the record reveal a genuine issue of material fact concerning Capital's alleged violation of KRS 367.170.

■ Appellants' negligence action requires: (1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury. *Illinois Central R.R. v. Vincent*, Ky., 412 S.W.2d 874, 876 (1967). Thus to find potential liability to exist in the case at bar, there must first exist an affirmative duty of the appellees to advise the Mullinses about the availability of UIM coverage. The trial court and Court of Appeals held no such duty exists. We agree.

UIM coverage is optional, rather than mandatory, according to KRS 304.39–320. This section provides in part that:

> Every insurer shall make available *upon request* to its insureds underinsured motorists coverage. (Emphasis added.)

Contrasting this statutory language against statutory language found in KRS 304.20–020(1), a provision concerning uninsured motorist coverage, "no other conclusion is possible." *Flowers v. Wells*, Ky. App., 602 S.W.2d 179 (1980). "The uninsured motorist statute mandates that no liability policy shall be delivered or issued unless it contains a provision for uninsured motorists," *Id.*, whereas KRS 304.39–320

**248**

specifically states that a consumer shall have UIM coverage made available to him, "upon request."

The fact that UIM coverage is optional, is reemphasized when comparing the language found in KRS 304.39–320, with language found in both KRS 304.39–030(1), a statute covering basic reparations benefits, with language found in KRS 304.39–110, a statute covering tort liability. KRS 304.-39–030(1) provides in part that "every person suffering loss from an injury arising out of maintenance or use of a motor vehicle *has a right to basic reparations benefits.*" (Emphasis added.) Likewise, KRS 304.39–110(1) reads in part, *"[t]he requirement of security for payment of tort liabilities ..."* (Emphasis added.) "The legislature obviously could have made [UIM] coverage mandatory [as it did in KRS 304.20–020(1), KRS 304.39–030, and KRS 304.39–110], but elected to require it to be furnished only "upon request." *Flowers v. Wells, supra,* at 181.

Added RB are similarly optional. Language in the applicable statute, KRS 304.-39–140(1), mirrors that found in KRS 304.-39–320, for it provides:

> each reparation obligor of the owner of a vehicle required to be registered in this Commonwealth shall, *upon request of a reparation insured,* be required to provide added reparation benefits for economic loss in units of ten thousand dollars ($10,000) per person.... (Emphasis added.)

Thus, added RB are statutorily optional and not mandatory, based upon reasoning we previously applied when determining if UIM coverage was mandatory, pursuant to KRS 304.39–320.

Appellants argue that even though appellees were not statutorily required to advise the Mullinses about availability of UIM coverage and added RB, an issue of material fact remains because the appellees were bound by a common law duty to exercise ordinary care to prevent foreseeable harm to their customers. Appellants assert that using ordinary care under the facts of the instant case, encompasses a common law

duty of the appellees to inform them about UIM and added RB.

■ The question of duty presents an issue of law. 57A Am.Jur.2d *Negligence* § 20; *Prosser and Keeton on Torts,* § 37 (5th ed. 1984). When a court resolves a question of duty it is essentially making a policy determination. *See Nelson v. Davidson,* 155 Wis.2d 674, 456 N.W.2d 343, 345 (1990). While Kentucky courts have not ruled on the specific issue at bar, other jurisdictions have generally found "no affirmative duty to advise is assumed by mere creation of an agency relationship," *Hardt v. Brink,* 192 F.Supp. 879, 880 (D.C.Wash.1961).

An insurance agent ordinarily only assumes those duties found in an agency relationship. *Hardt, supra* at 880. An agent owes his principal 'the obligation to deal in good faith and to carry out the principal's instructions. *See* 29 A.L.R.2d 171. Other jurisdictions have found that, generally, an insurer may assume a duty to advise an insured when: (1) he expressly undertakes to advise the insured; or (2) he impliedly undertakes to advise the insured. *Trotter v. State Farm Mut. Auto. Ins. Co.,* 297 S.C. 465, 377 S.E.2d 343, 347 (1988). The insured has the burden of proving that the insurer assumed such a duty. *Id.*

■ An implied assumption of duty may be present when: (1) the insured pays the insurance agent consideration beyond a mere payment of the premium, *Id.,* citing *Nowell v. Dawn–Leavitt Agency, Inc.,* 127 Ariz. 48, 617 P.2d 1164 (1980); (2) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on, *Trotter, supra,* citing *Nowell, supra;* or (3) the insured clearly makes a request for advice. *Trotter, supra,* citing *Precision Castparts Corp. v. Johnson & Higgins of Oregon, Inc.,* 44 Or.App. 739, 607 P.2d 763 (1980).

The appellants in the case at bar neither paid the insurance agent an amount beyond the premium for such advice, nor had a long-term course of dealing with the insur-

ance agent, nor expressly asked for advice. Thus, it appears no implied assumption of duty to advise is implicated.

■ Appellants assert that Mrs. Mullins' request for a "policy as good as I can get on liability and no-fault," is a request for advice. Other jurisdictions have interpreted a request for "full coverage," "the best policy," or "similar expressions as not plac[ing] an insurance agent under a duty to determine the insured's full insurance needs, to advise the insured about coverage, or to use his discretion and expertise to determine what coverage the insured should purchase." *Trotter, supra,* 377 S.E.2d at 347. *See also Ethridge v. Assoc. Mut., Ins.,* 160 Ga.App. 687, 288 S.E.2d 58 (1981); *Nowell, supra,* 617 P.2d at 1168; *Nelson, supra,* 456 N.W.2d at 347. The Court of Appeals, likewise, in *Flowers v. Wells, supra,* determined that an insured's request for "full coverage," did not constitute a request for optional coverage, UIM coverage being optional. In the case at bar, Mrs. Mullins admits to asking for a policy as good as she could purchase "on liability and no-fault," since she could not "afford *full coverage.*" (Emphasis added.) Since her request was for less than full coverage, it precludes including optional coverages such as UIM and added RB, within its parameters, because we do not find circumstances creating an express or implied assumption of a duty to advise.

■ We note that while appellants fail to produce facts evidencing an express assumption of duty to advise, such a duty may be present if the company, or agent, represents directly, or by advertising, that it will assume responsibility to advise the customer as to what is needed. *See* 2A C.J.S. *Agency,* § 54. When an insurance company or an agent "holds itself out" to the public as a counselor and/or advisor, the scope of duty to advise is commensurate with the obligation assumed by the insurance company or agent selling the insurance. *See Sandbulte v. Farm Bureau Mut. Ins. Co.,* 343 N.W.2d 457, 464 (Iowa 1984); *Trotter, supra,* 377 S.E.2d at 347; 88 A.L.R. 4th 270, § 5[b].

The principle involved here is simply that a person who holds himself out to the public as possessing special knowledge, skill or expertise must perform his activities according to the standard of his profession. If he does not, he may be held liable under ordinary tort principles of negligence for the damage he causes by his failure to adhere to the standard. *Darner Motor Sales v. Universal Underwriters,* 140 Ariz. 383, 682 P.2d 388 (1984), citing *Prosser and Keeton on Torts, supra,* § 32.

When circumstances present an issue of an insurance company and/or agent "holding itself out" as a counselor and/or advisor, proof of the standard in this type of case may require expert testimony at trial. *Id.* The case at bar does not pose such an issue.

To impose a duty to advise under the facts of this case would alter the expressed public policy of the Commonwealth established by the General Assembly on the dates the policy was issued, and when the injury occurred. If such a duty to advise should be imposed, it should be imposed as a statutory one, and not expanded by the judiciary. *See Nelson v. Davidson, supra,* 456 N.W.2d at 346–347, citing *Gibson Government Employees Insurance Company,* 162 Cal.App.3d 441, 451–52, 208 Cal.Rptr. 511, 518 (1984). In *Gibson, supra,* a case similar to the instant case, the court observed:

> The obvious extension of the rule advocated by plaintiffs herein would subject insurance carriers to liability for failing to advise their own insureds of an arguably better package of insurance offered by a competitor ... [such a rule] would remove any burden from the insured to take care of his own financial needs and expectations in entering the market place and choosing from among the competitive products available.

■ The 1990 Legislature, after this cause of action arose, in KRS 304.20–040(12) enacted a type of insurance advisor provision:

> Except where the maximum limits of coverage have been purchased, every notice

of first renewal shall include a provision or be accompanied by a notice stating in substance that added uninsured motorists, *underinsured motorists,* and *personal injury protection coverages* may be purchased by the insured. (Emphasis added.)

With this statutory provision, insurance companies now are required to advise their insured of the availability of this protection in the first notice of renewal. While this provision was enacted after this cause of action accrued, the General Assembly expressed its intent in this area by the then-applicable statutes. We therefore decline to judicially interpose a rule to the contrary.

Failing to find the existence of a statutorily expressed, or implied assumption of duty to advise appellants, we thus conclude there is no issue of material fact warranting reversal of the trial court's grant of summary judgment to the appellees, concerning the question of their duty to advise on the availability and desirability of purchasing UIM coverage and added RB. *Steelvest, supra.*

We likewise find no error in the Court of Appeals' opinion finding that conduct of Commonwealth fell outside the parameters of the Kentucky Consumer Protection Act, KRS 367.170. Appellants claim this statute was violated because (1) the appellees failed to advise them about the availability of UIM coverage and added RB, and (2) that Capital failed to instruct its agents about the availability of such optional coverage. Because the legislature, as we have already noted, does not mandatorily require offering the insurance coverages in question, Commonwealth's failure to inform the appellants about such coverages does not constitute an unfair, false, misleading, or deceptive act or practice, as found in KRS 367.170.

We therefore affirm the Court of Appeals' opinion that upheld the trial court's grant of summary judgment to the appellees, since we find no issue of material fact present. *Steelvest, supra.*

LAMBERT, LEIBSON, REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

COMBS, J., dissents without a separate opinion.