NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0739n.06

Nos. 13-6373/6445

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| HARDY OIL COMPANY, INC., | ) | **FILED**<br>Sep 22, 2014<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellant/Cross-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONWIDE AGRIBUSINESS INSURANCE | ) | ON APPEAL FROM THE |
| CO., | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| Defendant, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| WELLS FARGO INSURANCE - INDIANA, | ) | |
| | ) | |
| Defendant-Appellee/Cross-Appellant. | ) | |

Before: SUTTON and KETHLEDGE, Circuit Judges; ROSENTHAL, District Judge.[*]

KETHLEDGE, Circuit Judge. Hardy Oil spent over $500,000 to clean up a diesel spill at one of its facilities. Hardy later brought this suit on the theory that its insurance firm, Wells Fargo, should have advised Hardy to obtain a policy that would have covered the spill's costs. The district court granted summary judgment to Wells Fargo. We affirm.

I.

Hardy is a family-owned business that distributes petroleum products. Over the course of a few decades, Hardy sometimes purchased insurance through Roland Lehnus, an insurance agent with Wells Fargo. In 2009, Hardy purchased from Lehnus policies that insured the

---

[*] The Honorable Lee H. Rosenthal, Judge for the Southern District of Texas, sitting by designation.

company's fuel-storage plant in Richmond, Kentucky. The policies were issued by Nationwide Insurance.

In 2010, Hardy learned that diesel fuel was leaking from an underground pipe at the Richmond plant. As a result, Hardy incurred over $500,000 in expenses. Nationwide denied any coverage for those costs. Hardy thereafter sued Nationwide for breach of contract and Wells Fargo for negligence. Hardy settled its case against Nationwide. In the suit against Wells Fargo, Hardy alleged that Wells Fargo's agent, Lehnus, had a duty to advise Hardy to purchase a pollution-liability insurance policy that would have covered its losses from the spill.

After discovery, Wells Fargo moved for summary judgment, arguing among other things that insurance for spills like this one was simply "not available in Kentucky." R. 157-15 at 7. In response, Hardy presented an expert report from Howard Tollin, who asserted that "more than 25 insurers could have provided pollution liability coverage which would have covered the loss." R. 169-2 at 4. In its reply brief, Wells Fargo alleged—for the first time—that Hardy could not have obtained the relevant coverage for several reasons specific to the Richmond plant, including the plant's old age and equipment. R. 178 at 5. In support, Wells Fargo attached, again for the first time, an affidavit from its own expert witness, Reynolds Renshaw. R. 178-2.

The day after Wells Fargo filed its reply brief, the district court granted summary judgment to Wells Fargo. The court held that, based on the Renshaw affidavit, Hardy could not have obtained coverage for the spill even if it had tried. It is unclear whether the court also held that Lehnus had a duty to advise Hardy to obtain pollution-liability coverage. Hardy appealed and Wells Fargo cross-appealed.

II.

As an initial matter, Hardy argues that the district court should have given it an opportunity to respond, prior to granting Wells Fargo's motion, to the arguments and evidence that Wells Fargo presented for the first time in its reply brief. We review the district court's decision not to give Hardy Oil that opportunity for an abuse of discretion. *See Seay v. Tennessee Valley Auth.*, 339 F.3d 456, 482 (6th Cir. 2003). Before a district court grants summary judgment, it must allow the nonmoving party an opportunity to respond to any new arguments or evidence raised in the moving party's reply brief. *Seay*, 339 F.3d at 481-82. "This is particularly true when the district court relies on" the new arguments and evidence in granting summary judgment. *Id.* at 482.

Here, Wells Fargo argued in its reply brief, for the first time, that Hardy Oil could not have obtained pollution-liability coverage for the Richmond plant. Hardy Oil had no chance to respond to that argument, because the district court granted summary judgment the day after Wells Fargo filed its reply brief. Wells Fargo says that the new argument merely "supplement[ed]" its earlier argument that pollution-liability insurance for aboveground storage tanks "is not available in Kentucky." But the two arguments are different: the first is that nobody sells this kind of policy in Kentucky; the second is that the Richmond plant in particular was uninsurable.

In addition, Wells Fargo attached new evidence to its reply brief, namely the Renshaw affidavit. Wells Fargo contends that the Renshaw affidavit was not "new evidence," because during discovery it had sent Hardy expert disclosures with the affidavit attached. But that does not mean that Hardy knew that Wells Fargo would use the affidavit as a basis for summary judgment. And when the district court granted the motion, it relied exclusively on Renshaw's

3

contention that the Richmond plant would not have qualified for coverage. The district court therefore should have given Hardy "an adequate opportunity to respond to" the new arguments and evidence before entering judgment in favor of Wells Fargo. *See Seay*, 339 F.3d at 482.

That mistake was harmless, however, if Lehnus had no duty to recommend pollution-liability coverage in the first place. Wells Fargo argues that Lehnus did not, which if true would be an alternative ground for the district court's grant of summary judgment. We review the grant de novo. *Montell v. Diversified Clinical Servs.*, 757 F.3d 497, 503 (6th Cir. 2014).

Under Kentucky law, whether an insurance agent has a duty to advise his client (as opposed to merely a duty to execute the client's orders) is a question of law. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 248 (Ky. 1992). As a general matter, "no affirmative duty to advise is assumed by the mere creation of an agency relationship." *Id.* (quoting *Hardt v. Brink*, 192 F. Supp. 879, 880 (W.D. Wash. 1961)). The duty arises under only three circumstances: first, where the client pays consideration beyond a premium; second, where there is "a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on"; or third, where the client "clearly makes a request for advice." *Id.*

Hardy does not argue that the first circumstance—payment of additional consideration—was present here. Hardy does argue that the second circumstance was, citing Hardy's long-term relationship with Lehnus and Lehnus's knowledge of the petroleum business. But Hardy itself was aware of the risks presented by its own business; and more to the point, the record shows that Hardy's relationship with Lehnus was not based on any reliance upon his advice, but on price. Indeed, over the years Hardy switched from Lehnus to other agents several times, in each instance because of price. R. 169-1 at 5. Price, not advice, was the basis of their sometimes-

4

relationship—a point illustrated by the testimony of Butch Hardy (the company's founder) that, despite this litigation and the omission that gave rise to it, he would use Lehnus again "[i]f the price is right." R. 157-4 at 9.

Nor was the third circumstance—a clear request for advice—present here. Hardy argues that it was, because Butch asked Lehnus if "there [was] anything that I needed to add to our policy to protect me." R. 157-4 at 6. But the Kentucky courts have held that this sort of open-ended inquiry is not a clear request for advice. *See Mullins*, 839 S.W.2d at 249. Thus, in summary, Wells Fargo had no duty to advise Hardy to purchase pollution-liability insurance.

The district court's judgment is affirmed.