*859 OPINION OF THE COURT BY CHIEF JUSTICE MINTON
The Kentucky Motor Vehicle Reparations Act (MVRA) defines an underin-sured motorist as “a party with motor vehicle liability insurance'coverage in an amount less than a judgment recovered against that party for damages on account of injury due to a motor vehicle accident.”[1] The Act directs all insurers to make available to their insureds, upon request, un-derinsured motorist. coverage (UIM) to pay the insured, according to the terms of the insurance policy, for any uncompensated damages the insured may recover in a judgment against an underinsured motorist on account of injury from a motor vehicle accident.[2]
Craig Smith suffered injuries in a motor vehicle accident and- settled his: injury claim with the adverse driver’s insurer for policy limits. Smith then submitted • a UIM claim to his insurer, Allstate Insurance Company, claiming loss from injuries in excess, of the amount recovered from the adverse driver’s insurer. But Allstate denied the claim because Smith’s policy did not provide for UIM coverage. -So Smith sued. Allstate for breach of contract and a declaration of rights as to UIM coverage. And he sought punitive damages for Allstate’s alleged bad faith in denying him. UIM coverage. Allstate counterclaimed to have its rights declared under the policy. The trial court granted summary judgment in favor of Allstate because Smith had not paid a premium for UIM or requested UIM coverage.
The Court of Appeals reversed the trial court’s judgment even though it rejected the bulk of Smith’s arguments. That court agreed with Allstate that the policy did not contain UIM coverage, the policy language was unambiguous on that point, and Allstate was under no common-law duty to inform Smith that UIM coverage was available and not provided. But the court did find Allstate had a duty under a specific provision of the MVRA to advise Smith of possible UIM coverage.
On discretionary review, we reverse the Court of Appeals and hold that Allstate was under no obligation to remind Smith of possible UIM coverage with each renewal of his policy. No such obligation has ever been imposed on an insurer and no provision of the MVRA alters this fact. UIM is an optional coverage to be requested by the 'insured and it must be mentioned by the insurer only when giving the insured “notice of first renewal.”[3]
I. FACTUAL AND PROCEDURAL BACKGROUND.
In the spring of 2006, Smith was injured in an automobile accident. The at-fault driver’s insurer paid Smith $25,000, the liability policy limit. According to Smith, this settlement was insufficient to. cover his loss from the injuries he sustained,- so he made a claim for UIM benefits against Allstate, his own automobile liability insurer.
Allstate denied Smith’s claim because Smith had never -purchased UIM coverage. In point of fact, UIM coverage was n<?t listed on the declarations, page,of Smith’s policy — a policy Smith had maintained with Allstate on a six-month renewal basis since 1979 — and Smith had never paid a premium for UIM coverage. It is undisputed that Smith never requested Allstate provide him UIM coverage. But Allstate *860 advised Smith about UIM coverage via Form X4093-1.
II. ANALYSIS.
Summary judgment is appropriate only “when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant.”[4]' Summary judgment is not a substitute for trial. Presented with a summary-judgment motion, the trial court’s primary focus is to determine whether an issue of material fact exists. If a question of material fact exists when viewing the evidence through a lens most favorable to Smith, the party opposing summary judgment, summary judgment is inappropriate. Even so, “a party opposing a properly supported summary judgment cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial.”[5]
Taking this into consideration, it is evident that a summary-judgment motion presents only questions of law with the simple determination of whether a fact question exists. So our review is de novo, and we are under no obligation to defer to the lower courts.
For his claim to be successful, Smith must show that Allstate (1) had a duty either to provide him with UIM coverage or inform him of its availability; (2) Allstate breached that duty; and (3) Smith was injured because of that breach. So for Allstate to be liable, Smith must show that there exists an affirmative duty to notify and inform its insureds of UIM coverage. The Court of Appeals found Allstate had such a statutory duty under KRS 304.39-040(13). We disagree.
It is important to keep in mind the optional nature of UIM coverage. Unlike other types of automobile coverage,[6] insurers are required only “to make [UIM] available upon request [by their] insureds.” [7] In the end, the responsibility of examining the policy and purchasing UIM coverage lies with the policyholder — if a policyholder does not ask for UIM coverage, the insurer is not required to offer it. Without something more, there is no affirmative duty on an insurer to inform its insured of UIM coverage.
Smith argues that KRS 304.20-040 — a relatively recent statutory addition to the MVRA — creates such an affirmative duty. According to Smith, the statute mandates insurers notify their policyholders of UIM coverage when providing notice of the policy’s renewal. We agree that KRS 304.20-040 places the onus on the insurers for apprising its insureds of the opportunity to purchase UIM coverage. But the question is when, under this statute, is this duty triggered?
The resolution of the central issue in this ease requires statutory interpretation: whether KRS 304.20-040(13) creates a duty for insurers to notify insureds of UIM coverage availability. Our resolution begins and ends with applica *861 tion of the cardinal rule: “the intention of the legislature should be ascertained and given effect.”[8] Discerning legislative intent-requires a focus on the words chosen by the legislature.[9] If those words, given their common understanding and meaning, are clear or unambiguous, our task is complete — we simply apply the will of the legislature.[10] Only when a statute is ambiguous do we reach for more extensive interpretative aids. This case calls for nothing more than reading the words of the statute at issue.
KRS 304.20-040(13) reads as follows: “Except where the maximum limits of coverage have been purchased, every notice of first renewal shall include a provision or be accompanied by a notice stating in substance that added uninsured motorists, un-derinsured motorists, and personal injury protection coverages may be purchased by the insured.”[11] In this context, renewal is “the issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer.”[12]
So, what is the “notice of first renewal?” As Allstate argues, is an insurer required to notify of UIM coverage the first time a policy is renewed but not subsequent renewals? Or does “notice of first renewal” mean every time a policy is renewed, as Smith argues? The text of the statute clearly supports Allstate.
“Renewal” is mentioned in KRS 304.20-040 thirteen times. Of those thirteen, “renewal” has a modifier only once: “first” in section 13. Section 8, for example, involves the methods an insurer may use to indicate its willingness to renew the policy, one of which is “delivering a renewal notice.” [13] It would seem, therefore, all renewal notices are not created equal, We presume, of course, the General Assembly acted with deliberation when it inserted “first” into the statute. In other words, “first” must mean something. If Smith’s reading were adopted and every notice of renewal required UIM mentioned, “first” would be surplusage. Allstate’s reading is the only reading that gives weight to “first.” The “notice of first renewal” means just that: the first renewal notice sent by an insurer to its insured.[14]
*862 Smith predicts this view1 will lead to unfairness and inequity. We disagree. First of all, our research indicates few, if any, other states have similar statutory provisions, either for the first renewal or all renewals.[15] The vast majority of insureds across the country are, accordingly; entitled to no notification at all regarding optional UIM coverage. To the extent KRS 304.20-040(13) requires any degree of UIM notification, it is a step away from potential unfairness or inequity. ■
Limiting UIM notification to the first renewal is reasonable on a policy level as well. After all, no written notice or mention of UIM coverage is required, unless the insured requests such information. At the very least, KRS 304.20-040(13) serves as some indication of UIM availability, even if it is less than Smith may prefer. And it seems a reasonable decision by the General Assembly to place new insureds on a different information plane'than longtime insureds. An insured early in the life of his policy may be less familiar with policy coverages than an insured who has had the same policy for twenty years. With the notification in the initial stages of the course of dealing, the insurer and insured can make sure the policy is correct before the insured- pays premiums for years or suffers loss because of a mistaken expectation of coverage.
So “notice of first renewal” means the first renewal notice the insurer delivers to the insured. Because Smith’s policy began in 1979 and was renewed every six months, Smith’s policy was first renewed well over thirty years ago, long before KRS 304.20-040 was added to the MVRA to require UIM-information to be inclüded in the first renewal notice. As. we said in Mullins, “the General Assembly expressed its intent in this area by the then-applicable statutes!; w]e therefore decline to judicially interpose a rale to the contrary.”[16] In other words, Allstate was .under no obligation to provide UIM information when Smith’s policy was initiated or first renewed.
Even if we were to hold “notice of first renewal” to mean the first renewal-notice sent to Smith after 1990 — the year the language regarding first renewal was added to KRS 304.20-Ó4Ó — should have contained UIM information, Allstate did not breach its duty to notify Smith. Allstate sent Smith Form X4093-1 with each renewal, and Smith acknowledges receiving that form. This form notified Smith that he could purchase higher limits for uninsured motorist coverage, UIM, and PIP coverage. Smith’s policy was renewed every six months, so Smith saw this notice many times over the life of the policy. Despite the notification in Form X4093-1, there is no evidence that Smith ever questioned his agent about purchasing UIM coverage.[17]
, Smith • argues . the Form X4093-1 was ambiguous because it made it seem that-he *863 already had UIM coverage and higher limits were available to him. The problem with this argument is two-fold: the form conveyed the very information that KRS 304.20-040 requires and Smith’s policy was clear that UIM coverage was not included. KRS 304.20-040(13) requires “a provision ... stating in substance that added uninsured motorists, underinsured motorists, and personal injury protection coverages may be purchased by the insured.” This is exactly what Form X4093-1 said.[18] To the extent there is any ambiguity, it is the result of statutory drafting, not Form X4093-1.
In any event, Smith’s policy was explicit that UIM coverage was not provided. The coverage was not listed on the declarations page, and the policy was clear that any coverage not appearing on the declarations page was not provided. And Smith never paid a premium for UIM coverage. Arguing an insurance policy renewal form is ambiguous is not persuasive when the policy itself is so clear that the insured does not have a particular coverage. Here, Smith’s ambiguity argument regarding Form X4093-1 is undercut by the policy’s clarity, not to mention Smith’s opportunity when he renewed the policy every six months for thirty-two years to read the policy and realize UIM coverage was not there.
Before concluding, we should note that Smith also attempts to argue Allstate had an implied duty to inform him about his lack of UIM coverage because of the lengthy course of dealing with Smith— roughly thirty-two years. We have previously recognized that insurers can be subject to implied duties under certain conditions: (1) “the insured pays the insurance agent consideration beyond a mere payment of the premium”; (2) “there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on”; or (3) “the insured clearly makes a request for advice.”[19] In the context of this case, only the course of dealing is relevant for Allstate’s alleged implied duty.
We cannot deny that Smith had a lengthy relationship with Allstate. But a lengthy relationship, standing alone, is insufficient to create an affirmative duty. Smith argues the relationship was lengthy and suggested an added degree of reliance or trust. Perhaps Smith did trust Allstate and its agent a great deal, but evidence of that fact is absent. There is no indication Smith ever sought counsel from his agent or sought advice on his coverage. Instead, Smith simply asked for the “best” coverage — or, maybe he did not even ask for that, if his agent’s account is true — and never actually read his policy. Being willfully ignorant of a contract’s terms does not equate to placing trust in the party with whom one contracts. Given the lack of discussion regarding Smith’s coverage, Smith’s agent had no reason to believe his advice was sought or relied on in choosing particular coverages — this is especially true with regard to additional coverage like UIM.
Allstate had no affirmative duty under KRS 304.20-040(13) or otherwise to notify or counsel Smith on UIM’s availability.
*864 Summary judgment was appropriate.[20]
III. CONCLUSION.
We reverse the decision of the Court of Appeals and reinstate the trial court’s judgment.
All sitting. Minton, C.J.; Cunningham, Hughes, Keller, Venters and Wright, JJ., concur.

. Kentucky Revised Statutes (KRS) 304.39-320(1).

. KRS 304.39-320(2).

. KRS 304.20-040(13).

. Shelton v. Kentucky Easter Seals, Inc., 413 S.W.3d 901, 905 (Ky. 2013). As we always caution, "[[Impossible is to be used in a practical sense, not in an absolute sense.” Perkins v. Hausladen, 828 S.W.2d 652, 654 (Ky. 1992).

. Steelvest, Inc. v. Scansteel Serv. Ctr., Inc., 807 S,W.2d 476, 482 (Ky. 1991).

. See, e.g., KRS 304.20-020(1); Flowers v. Wells, 602 S.W.2d 179 (Ky. 1980) ("The uninsured motorist statute [KRS. 304,20-020] mandates that no liability policy shall be delivered or issued unless it contains a provision for uninsured motorists.”).

. KRS 304.39-020 (emphasis added).

. Jefferson Cnty. Bd. of Educ. v. Fell, 391 S.W.3d 713, 719 (Ky. 2012).

. Shawnee Telecom Resources, Inc. v. Brown, 354 S.W.3d 542, 551 (Ky. 2011) ("We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration.”). Of note, we make certain presumptions when interpreting statutes: (1) “[w]e presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes”; (2) "[w]e also presume that the General Assembly did not intend an absurd statute or an unconstitutional one.” Id. (internal citations omitted).

. See Commonwealth v. Plowman, 86 S.W.3d 47, 49 (Ky. 2002) ("This Court has repeatedly held that statutes must be given a literal interpretation unless they are ambiguous and if the words are not ambiguous, no statutory construction is required.”).

. Emphasis added.

. KRS 304.20-040(l)(c).

. KRS 304.20-040(8).

. Of note, in the past we have not found this reading to be remarkable, even when the statute was newly adopted. In Mullins v. Comm. Life Ins. Co., 839 S.W.2d 245, 249-50 (Ky. 1992), we quoted the statute and summarized it with little excitement: "With this statutory provision, insurance companies now are required to advise their insured of the availability of this protection in the first notice of renewal,” Apart from Smith’s argument, this reading still generates little excitement — the words say what they say and we are not *862 ' empowered to make them say something different.

. See, e.g., A.R.S. § 20-259.01 (Arizona) ■ ("[T]he offer [of UIM coverage] need not-be made in the event of the .. renewal of an existing policy.").

. 839 S.W.2d at 250.

. There is evidence that Smith inquired about a number of other coverages. For example, Smith had boat insurance through Allstate. In addition, Smith claims he expressed his desire to have full coverage to his agent. His agent denies this. No matter, the notion that vague requests such as "full coverage” create a duty for the insurer or agent has been rejected. Flowers, 602 S.W.2d at, 180-lSl. Smith did no tiling more than that here, It is not disputed that Smith never discussed UIM coverage with his agent,

. Form X4093-1 has previously been represented as sufficient in this context, albeit in an unpublished Court of Appeals decision. See McKenzie v. Allstate, No.2005-CA-001893MR (Ky.App. July 28, 2006) ("Form X4093-1 in the policy renewal put the policyholder on notice by informing him of the opportunity to purchase higher limits for UM, UIM, and PIP coverage.”).

. Mullins, 839 S.W.2d at 248.

. The motion to strike portions of Appellee's brief is Denied.