NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0291n.06
Case No. 16-6549

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| | ) | **FILED** |
| ATIC ENTERPRISES, INC., | ) | May 23, 2017 |
| | ) | DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| COTTINGHAM & BUTLER INSURANCE | ) | DISTRICT OF KENTUCKY |
| SERVICES, INC., | ) | |
| | ) | **OPINION** |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**BEFORE: GIBBONS, SUTTON, and COOK, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff Atic Enterprises, Inc. ("Atic") is a now-defunct trucking company that bought an insurance policy through Cottingham & Butler Insurance Services, Inc. ("Cottingham & Butler"). After two loads of copper were stolen from Atic's trucks, it filed a claim with Cottingham & Butler, which was denied. Atic sued Cottingham & Butler, contending that the insurance company was negligent and misrepresented Atic's policy. Cottingham & Butler defends that it provided more notice of the change in insurance coverage than is required by Kentucky law. Further, Cottingham & Butler notes that, despite being asked specifically what cargo the company hauled, Atic concealed that it hauled copper. The district court granted summary judgment for Cottingham & Butler and dismissed Atic's claim. For the reasons that follow, we affirm the judgment of the district court.

I.

Atic was a contract-carrier trucking company based in Bowling Green, Kentucky.[1]  Atic claimed that it transported general freight, including commodities dry bulk, non-alcoholic beverages, and paper products, from 2011 to 2014.  Atic also hauled copper, despite not disclosing this fact to government regulators or to its insurance provider.  The company did not own any of the goods it transported but rather served as a transport service for other companies shipping their goods.

From July 2012 to July 2013, Atic had an insurance policy with Westchester Fire Insurance Company, sold by Cottingham & Butler sales agent Jacob Zeal.  Prior to the initial sale of the 2012–13 policy, Cottingham & Butler requested information from Atic about what materials the company transported.  Atic did not list copper among the items it transported.  Instead, it listed that it transported canned goods, paper and paper products, non-alcoholic beverages, and general merchandise.  It also stated that the information provided an accurate and complete representation of its business.  On this basis, Cottingham & Butler sold Atic a policy from Westchester Insurance that covered its transporting needs.  The 2012–13 policy did not contain a copper exclusion.

Prior to the expiration of the initial insurance policy, Westchester notified Atic that it would not automatically renew its current policy.  The notice read that "[i]f we are able to offer you insurance for the next policy term, the terms, limits and premium may be materially different from your current insurance policy."  Atic received and read this notice.  prompted further conversations between Atic and Cottingham & Butler's agent, Zeal, about a policy for 2013–14.  In July 2013, Zeal sent Atic a proposal for a new policy.  The proposal included a side-by-side comparison of the proposed 2013–14 policy and the current 2012–13 policy.  The proposal

---

[1] The company is no longer in business.

showed explicitly that copper was excluded from the new policy. In fact, copper is the first item listed under the "Property Not Covered" list at the bottom of the side-by-side coverage-comparison page. Again, Atic received and read this policy proposal. Cottingham & Butler provided Atic with the opportunity to update information about its coverage needs, including a chance to update the commodities it listed under "cargo" in the proposal paperwork. Atic, again, did not disclose that it was transporting copper.

In September 2013, Cottingham & Butler mailed the new 2013–14 policy to Atic. The new policy included a handful of explicit exclusions, including copper. Each of the new exclusions was listed on its own page providing specific details. Among them was a separate page titled "COPPER EXCLUSION." The page stated, "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." It stated that "[c]opper is added to Paragraph A.2, Property Not Covered." Atic contends that it never received this policy.

In early November 2013, two loads of copper were stolen from Atic's trucks. Following the theft, Atic contacted Zeal for a copy of the 2013–14 policy. Zeal explained that the new policy excluded copper but encouraged Atic to submit a claim nonetheless. Atic submitted a claim, which Cottingham & Butler subsequently denied.

Atic sued Cottingham & Butler in connection with the 2013–14 policy. Although Atic initially filed multiple claims against Cottingham & Butler, it abandoned all but its negligence claim. Cottingham & Butler moved for summary judgment, arguing that it did not have a duty to advise Atic of the policy change, and that, even if it did have that duty, it was satisfied. The district court granted Cottingham & Butler's motion, finding that the 2013–14 policy clearly stated a copper exclusion, and that there was no further duty to advise or notify Atic of the policy change. Atic now appeals.

II.

We review a district court's grant of a summary judgment motion *de novo*. *Great Am. Ins. Co. v. E.L. Bailey & Co., Inc.*, 841 F.3d 439, 443 (6th Cir. 2016). Taking the evidence in the light most favorable to the non-moving party, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The mere presence of a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence upon which a jury could reasonably find for the non-moving party. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). This diversity action is governed by Kentucky negligence law.[2]

A.

To recover on a claim of negligence, Kentucky law requires a plaintiff to establish (1) that the defendant owed a duty of care; (2) that the defendant breached that duty; and (3) that the breach actually and proximately caused plaintiff's damages. *Helton v. Am. Gen. Life Ins. Co.*, 946 F. Supp. 2d 695, 708 (W.D. Ky. 2013) (citing *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245 (Ky. 1992)). Cottingham & Butler argues that it owed Atic a standard duty of care in the sale of the 2013–14 insurance policy and that it subsequently met that duty. Atic disagrees. It argues that Cottingham & Butler owed a higher duty of care and was required under Kentucky law to notify it of the policy change and discuss that change at length in its role as insurance advisor. We find that Cottingham & Butler had no such additional duty under Kentucky law, and even if it did, that the company satisfied that duty.

The duty an insurance agent has to his clients is a question of law. *Hardy Oil Co., Inc. v. Nationwide Agribusiness Ins. Co.*, 587 F. App'x 238, 240 (6th Cir. 2014). Under Kentucky law,

---

[2] The parties do not dispute the choice-of-law issue, as all relevant events occurred in Kentucky.

there is "no affirmative duty to advise . . . by the mere creation of an agency relationship." *Id.* Instead, an insurance agent owes his clients a standard duty of reasonable care. *Associated Ins. Serv., Inc. v. Garcia*, 307 S.W.3d 58, 63 (Ky. 2010); *Helton*, 946 F. Supp. 2d at 708. Atic, however, contends that Cottingham & Butler's agent, Zeal, took on the special role of insurance advisor, and with that, owed a heightened standard of care.

An insurance agent can assume a duty to advise if he expressly or impliedly undertook to advise his client. *Mullins*, 839 S.W.2d at 248. "An implied assumption of duty may be present when: (1) the insured pays the insurance agent consideration beyond a mere payment of the premium; (2) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on; or (3) the insured clearly makes a request for advice." *Id.* (internal citations omitted).

Applying these factors, Zeal did not expressly or impliedly assume a duty to advise. Atic had been using Cottingham & Butler as its insurance agent since 2012. They bought a one year policy, and then when Westchester indicated it would not renew the policy, they worked for a second time with Zeal to update their information and purchase a new policy for 2013–14. Thus, this was not a long course of dealing. Additionally, there is no evidence that Atic paid Zeal consideration beyond the payment of a premium. *Mullins*, 839 S.W.2d at 248. And, most importantly, Atic never made any clear requests for advice on its insurance coverage relating to transporting copper. In fact, Atic never even disclosed to Cottingham & Butler that it transported copper. It withheld that information in the forms Zeal provided as a part of the application for insurance coverage. As the district court aptly noted, Atic's "allegations are simply a description of the role of an insurance agent." Zeal is licensed, represented that he was a transportation consultant, tried to sell insurance to Atic, and represented to Atic that it would be

easier for it to get insurance if it consolidated its company. But this conduct does not make Zeal responsible to Atic at a higher standard. Thus, Cottingham & Butler owed Atic the standard duty of care.

B.

In the insurance context "where the language of an insurance contract unambiguously explains the terms and conditions, no separate formal notification is required to effectuate a policy provision unless the unannounced change misleads an insured." *Marcum v. Rice*, 987 S.W.2d 789, 791–92 (Ky. 1999). It is clear from the language of the policy that copper was excluded from coverage. Thus, Cottingham & Butler had no additional duty to provide separate notification of the exclusion beyond the language of the policy, and there was no reason to further explain the policy's terms because those terms were unambiguous.

Despite the absence of a duty to provide additional notice, Cottingham & Butler provided Atic with multiple documents that listed the new policy's copper exclusion. Atic admits to reading many of the documents in which the exclusion was present but claims that it did not notice it. Despite Atic's protestations, Cottingham & Butler provided ample additional notice of the policy change prior to the issuance of the new policy, and it did so despite not being required to provide such notice. Even if, as Atic contends, it did not receive a copy of the 2013–14 policy from Cottingham & Butler, it was clear in every document leading up to purchasing that policy that copper was explicitly excluded. And Cottingham & Butler did not know that Atic was hauling copper, since Atic concealed that fact when it applied for insurance coverage, so Zeal had no reason to further advise Atic about the exclusion.

III.

For the reasons stated above, we affirm the judgment of the district court.