RENDERED:  DECEMBER 4, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1095-MR

KARI CARPENTER MATTSON AND
EYEMAX, PLLC                                                          APPELLANTS


                    APPEAL FROM FAYETTE CIRCUIT COURT
v.            HONORABLE KIMBERLY N. BUNNELL, JUDGE
                    ACTION NO. 17-CI-00973


NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY                                                       APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, MAZE, AND MCNEILL, JUDGES.

CALDWELL, JUDGE:  The Appellants have requested review of the Fayette

Circuit Court's granting of a motion to dismiss the claims of Appellant Kari

Carpenter Mattson and its granting of a motion for summary judgment disposing of

the claims of Appellant EyeMax, PLLC.  For the following reasons, we affirm the

circuit court.

## FACTS

Kari Carpenter Mattson is a doctor of optometry and is one of the principals of a Lexington business called EyeMax, PLLC (hereinafter "EyeMax") along with her husband. The business operates optometry clinics in several Walmart stores in central Kentucky. The business obtained various business insurance products from Northwestern Mutual Life Insurance Company (hereinafter "Northwestern"), amongst them a "disability overhead expense policy," which would provide coverage for realized business losses should Mattson become disabled and the monthly income of the operation suffer more than a $200 downturn as a consequence in any given month.

In 2015, Mattson was diagnosed with breast cancer. Whilst undergoing treatments, she was only able to work reduced hours, but did keep working through her illness. EyeMax, as owner of the disability expense policy, filed a claim, part of which was initially denied as it did not appear that the business suffered the required downturn in income to trigger coverage.[1] Sometime later, a different employee at Northwestern was working the claim when EyeMax provided evidence of a sufficient downturn to result in the payment of a claim. Seventeen months after the claim was filed, Northwestern paid EyeMax

---

[1] A payment representing one monthly payment of expenses covered was received.

$357,962.00 plus an additional $39,653.47, the latter amount representing 6% interest for the delay in payment.

In March of 2017, some five or so months after the payment of the claim and after Mattson had fully returned to working full-time following successful treatments, a complaint was filed by her against Northwestern in her personal capacity. That complaint was later amended to include EyeMax as a plaintiff and to include claims by that entity.

The Fayette Circuit Court dismissed the complaint as to Mattson personally in October of 2017, and the complaint, as amended, continued with only those claims of EyeMax extant.

In April of 2019, Northwestern filed a motion for summary judgment. The Fayette Circuit Court heard arguments of counsel in June of 2019 and entered an order granting the motion and dismissing the case completely.

This appeal followed.

## STANDARDS OF REVIEW

There are two standards of review applicable in this appeal. Two dispositive determinations of the trial court are being appealed; both a motion to dismiss the claims of Mattson as an individual and a motion for summary judgment of the claims of the EyeMax entity are appealed in this matter.

First, the standard of review of a trial court's granting of a motion to dismiss is *de novo.*

> A motion to dismiss for failure to state a claim upon which relief may be granted "admits as true the material facts of the complaint." So a court should not grant such a motion "unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved . . . ." Accordingly, "the pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true." This exacting standard of review eliminates any need by the trial court to make findings of fact; "rather, the question is purely a matter of law. Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?" Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue *de novo*.

*Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (citations omitted).

Likewise, an appellate court employs a *de novo* standard of review on questions concerning the propriety of a trial court's ruling on a motion for summary judgment. *Cmty. Fin. Servs. Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019). In the seminal case of *Steelvest, Inc. v. Scansteel Service Center, Inc.*, the Kentucky Supreme Court explained that "the proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." 807 S.W.2d 476, 480 (Ky. 1991). In reviewing such a

-4-

motion, the trial court must view the facts "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor," and in so doing must examine the proof to ensure that no real issue of material fact exists. *Id.* (citations omitted).

Thus, as factual findings are not at issue, the trial court's decision is granted no deference; review of a trial court's ruling on a motion for summary judgment is a matter of law. "A grant of summary judgment is reviewed *de novo* because factual findings are not at issue." *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018), *disc. rev. denied* (Mar. 6, 2019) (citing *Pinkston v. Audubon Area Cmty. Servs., Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006)).

## ANALYSIS

### I. Dismissal of Kari Carpenter Mattson's Individual Claims

In 2017, upon motion of the Appellee, the Fayette Circuit Court dismissed the individual claims of Mattson. The complaint, as originally filed, contained only these individual claims until an amended complaint was filed by the Appellants adding EyeMax as a party. The amended complaint was filed only after the motion to dismiss the original complaint was filed by the Appellee.

In the original complaint, Mattson forwarded three claims. The trial court dismissed all three claims. We will discuss each claim separately.

### a. Breach of Contract

Mattson first alleged that Northwestern breached the contract, the contract in which she was the "insured," but was not the owner.[2] Fundamentally, a party must have "privity of contract" with the party whom it sues for breach of contract to have standing.

> Thus, "[o]rdinarily, the obligations arising out of a contract are due only to those with whom it is made; a contract cannot be enforced by a person who is not a party to it or in privity with it, except under a real party in interest statute or, under certain circumstances, by a third-party beneficiary." Consequently, "[a]s a general rule, whenever a wrong is founded upon a breach of contract, the plaintiff suing in respect thereof must be a party or privy to the contract, and none but a party to a contract has the right to recover damages for its breach against any of the parties thereto."

*Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 579 (Ky. 2004) (citations omitted).

While EyeMax did have such privity as the owner of the policy, Mattson, as the insured person whose disability would trigger a claim under the policy, had no privity of contract with Northwestern. Thus, dismissal was appropriate as, clearly, Mattson was not entitled to prevail on the claim as a matter of law.

---

[2] Incidentally, Mattson was also the owner and the insured of a separate policy with Northwestern insuring her should she become disabled; Northwestern promptly paid claims pursuant to that contract, and no litigation ensued as a result of that contractual relationship.

**b. Negligence Claim**

Because of this lack of privity of contract, then, not only did Mattson's breach of contract claim have to fail, but so must her negligence claim. Mattson alleged that she was damaged, individually, because Northwestern negligently handled the claim of the owner, EyeMax.

Attempting to create a duty owed her, Mattson argues that a "universal duty of care" substitutes for her lack of privity and suggests that such would create a right of action by third parties. *See Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328 (Ky. 1987), *superseded by statute as stated in DeStock No. 14, Inc. v. Logsdon*, 993 S.W.2d 952 (Ky. 1999). However, such does not apply when the negligence alleged concerns an alleged breach of contract.

Kentucky law is clear that one must have privity to maintain an action for "negligence which consists merely in the breach of the contract." *Presnell*, 134 S.W.3d at 579 (quoting *Penco, Inc. v. Detrex Chemical Industries, Inc.*, 672 S.W.2d 948, 951 (Ky. App. 1984)). Because of the lack of privity of contract between Mattson and Northwestern, her claims for both breach of contract and negligence relating to the breach must fail, and the trial court correctly dismissed those claims.

### c. KUCSPA

Mattson's individual claim under the Kentucky Unfair Claims Settlement Practices Act (KUCSPA) was likewise dismissed by the trial court and we affirm this ruling. The Sixth Circuit offered a concise overview of Kentucky jurisprudence concerning bad faith claims against insurance companies in *Rawe v. Liberty Mutual Fire Insurance Co.*:

> A single test under Kentucky law exists for the merits of bad-faith claims, whether brought by a first- or third-party claimant or brought under common law or statute. This test, established by the Supreme Court of Kentucky in *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993), is the "leading case on 'bad faith' in Kentucky," and "the culmination of the development of 'bad faith' liability in [Kentucky] jurisprudence." [*Davidson v. American Freightways, Inc*., 25 S.W.3d 94, 99 (Ky. 2000)]. Kentucky law dictates that:
>
> > an insured must prove three elements in order to prevail against an insurance company for alleged refusal in bad faith to pay the insured's claim: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

462 F.3d 521, 527 (6th Cir. 2006).

The trial court ruled, and we agree, that Mattson had no standing to claim damages under the KUCSPA, and we further hold that Mattson presented no allegations that Northwestern lacked a reasonable basis to delay the payment of the policy such as to sustain a finding that it acted in bad faith such as to establish a claim under the KUCSPA. As Mattson had no standing, she could not possibly prevail, and thus dismissal of the claim was appropriate and proper.

The order dismissing all claims brought by Mattson individually was proper and is affirmed.

## II. Summary Judgment on EyeMax's Claims

Shortly before the dismissal of Mattson's individual claims, she amended the complaint to add EyeMax as an additional plaintiff. The allegations of EyeMax mirrored those of Mattson.

### a. Breach of Contract

An essential element of a breach of contract claim is damages. EyeMax forwarded no allegations of damages attributable to the delay in payment of the claim. It must be remembered that the claim, plus interest,[3] was paid to EyeMax. Rather, all of the alleged damages recited by EyeMax were focused on the consequences of the delay to Mattson, such as her having to continue to work

---

[3] Appellants made no claim that the interest paid was inadequate, and the contract does not appear to contain any liquidated interest percentage.

during treatments for cancer, but we have held that no duty was owed to her under the contract and so she is not a compensable party. EyeMax failed to present any damages to it, the business, due to any alleged breach of contract.

Having failed to plead damages related to the delay in payment of the claim to the owner of the policy, it was impossible for EyeMax to produce evidence at the trial warranting a judgment in its favor.

### b. Negligence Claim

The trial court found that the "Economic Loss Doctrine" barred a negligence claim here in what is a breach of contract claim.[4] Non-economic damages, such as those alleged by the plaintiff relating to Mattson having to work

---

[4] This doctrine is specifically cited in briefs to this Court. It is well explained in Justice Keller's concurrence in *Presnell*:

> The "economic loss rule" is a judicially created doctrine that "marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." "The crux of the doctrine is not privity but the premise that economic interests are protected, if at all, by contract principles, rather than tort principles." Although originally rooted primarily in product liability cases to protect manufacturers from tort liability for damage that is limited to the product itself, the economic loss rule "has evolved into a modern, general prohibition against tort recovery for economic loss." "In its broadest formulation, the economic loss rule prohibits tort recovery in negligence or products liability 'absent physical injury to a proprietary interest.'"

134 S.W.3d at 583-84 (citations omitted).

for the period of time the claim was unpaid, are not recoverable in a breach of contract claim.

However, not only does the Economic Loss Doctrine support the trial court's ruling on summary judgment on EyeMax's negligence claim, the fact that EyeMax can cite no damages to it flowing from alleged negligence is a death knell to the claim. It is axiomatic that damages must be suffered to successfully carry a suit for negligence. "In any negligence action under Kentucky law, a plaintiff must prove the existence of a duty, breach thereof, causation, and damages." *Boland-Maloney Lumber Co., Inc. v. Burnett*, 302 S.W.3d 680, 686 (Ky. App. 2009) (citing *Illinois Central Railroad v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967), and *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992)).

### c. KUCSPA

In the amended complaint, Appellants made no cognizable allegation that Northwestern acted purposefully in not paying the claim promptly. Such allegation is necessary to withstand summary judgment as "evidence of mere negligence or failure to pay a claim in timely fashion will not suffice to support a claim for bad faith" as "the element of malice or flagrant malfeasance must be shown." *United Servs. Auto. Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. App. 2003), *as modified* (Jun. 27, 2003). In other words, EyeMax had to have shown that it

-11-

was the conscious objective of Northwestern to delay payment so as to gain some advantage over EyeMax or to benefit its own interest in a manner which must have been pled and ultimately proven at trial. The failure of EyeMax to even so plead was fatal to its cause.

## **CONCLUSION**

Having found that the trial court properly dismissed Mattson's individual claims against the Appellee and that the trial court properly entered summary judgment in favor of the Appellee as to EyeMax's claim, we affirm.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Escum L. Moore, III
Lexington, Kentucky

BRIEF FOR APPELLEE:

W. Craig Robertson, III
Courtney Ross Samford
Lexington, Kentucky