## King v. Ohio Valley Terminix Co.

June 25, 1948.

Rehearing denied December 10, 1948.

L. B. Alexander and Ben B. Morris for appellant.

Waller, Threlkeld & Whitlow for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellant, plaintiff below, is the owner of a residence at Kings Mounds, Wickliffe, Kentucky. On April 2, 1942, he and appellee entered into contract whereby appellee agreed:

"To insulate the residence and laboratory against the attack of subterranean termites by applying Terminix in accordance with the requirements and specifications of E. L. Bruce Co., for the sum of $129.60. The undersigned warrants that any additional application of Terminix to insulate against the attack of termites found necessary upon re-inspection, shall be performed at no additional cost. This warranty is effective for one year from date of original insulation.

"Undersigned agrees to extend this warranty from year to year for the sum of $10.37, payable annually on or before each anniversary of the contract. As consideration for the guaranty hereinafter made by E. L. Bruce Company an amount equal to 7% of the first year contract price must immediately be paid to E. L. Bruce Company and the balance to the undersigned Licensee."

The contract carried the following indorsement: "E. L. Bruce Company hereby guarantees fulfillment of the terms of this contract by its licensee which guaranty is insured by the Sun Insurance Company. Any interlineation, addition to or change of this contract voids this guaranty. E. L. Bruce Co."

On April 12, 1946, appellant filed petition making the Terminix Corp. (licensee) E. L. Bruce Co. (manufacturer) and the Insurance Company, defendants; the latter two were not before the Court. Plaintiff alleged that defendant Terminix Corp. warranted "that any additional application of Terminix should after reinspection be applied at no cost;" that defendant Terminix Corp. has failed to carry out the terms of the contract, and "never insulated against termites, and has refused to undertake such insulation as required by said contract;" as a result "said residence is and has become increasingly infested with subterranean termites, such infestation having existed continuously since the original attempted insulation April 30, 1942."

It was alleged that on the date of contract the residence was worth $5,000, and household and personal effects $4,000, and that damages since caused by termites reduced these values by $6,200, for which sum appellant asked judgment.

Terminix Corporation filed general demurrer, which was not passed on at the time. Appellant later filed three amended petitions, and in the combined amendments the allegations were substantially as follows: (1) That defendant had failed to carry out its contract and "said residence had never been insulated against the attack of termites by applying Terminix in accordance with the requirements of the treating specifications of Bruce Company, or any other method; that defendant has failed and refused to undertake such insulation and continues to refuse to perform the insulation as required by said contract." No. 2 alleged that the warranty was to be extended from year to year on payment of $10.37 annually, and that he had paid this sum on the 1943-44 anniversary dates; that all damages had occurred between April 2, 1942 and April 2, 1945. He averred that an endorsement on the renewal notice showed that the guarantee was renewed. In a second paragraph it was alleged that before entering into the contract, defendant advertised that Terminix would stop the attack of termites. This advertisement folder was in part as follows:

"How to Stop Their Damages

"Terminix insulation will stop the attack of termites and prevent further damage. Many thousands of

homes throughout the country have been protected from termites with Terminix service. Performance of each Terminix contract is guaranteed by E. L. Bruce and Company and insured by Sun Insurance Company.

"Bruce Terminix insulation provides a complete chemical barrier throughout the under-structure and adjacent grounds. This blocks every possible approach of termites from their nests in the ground. Any termites that may remain in the wood above cannot get back to the earth for moisture and soon die. What about your property? Although apparently in perfect condition, it may be secretly infested with hordes of destructive termites. Why take a chance? Ask your Terminix Company for a skilled inspection and reliable report. Four out of five homes in this area are infested with termites. Inspection costs you nothing yet it may save you hundreds of dollars."

It was alleged that defendant knew the property was infested with termites, and defendant entered into the contract knowing his desire to have his property freed from termites and defendant represented that its insulation would, and defendant undertook to, stop their attack and "selected and applied the material to insulate according to its plan, for the sole purpose of preventing further damage by termites."

Plaintiff alleged that by reason of the representations there was an implied warranty by defendant that the insulation, as done by it, would stop the termite attack and prevent further damage; that it was the duty of defendant under the contract, and it was agreed, to inspect regularly to ascertain whether the insulation done in April 1942, had stopped the termite attack, and if found it had not it was to reinsulate the building, and that defendant had failed in this respect.

It was also alleged that defendant claimed to have broad experience and to be specialized in the handling of termites and the insulation of buildings against their attack, and he "had a right to and did rely upon defendant's judgment, experience and ability" to stop the termites attack.

Demurrers were sustained to the petition and amendments, and plaintiff came forward with No. 3 in

which he alleged that the parties had "construed and understood the words 'to insulate against the attack of termites,' to mean that the treatment as applied would stop their attack on said building, and prevent further damage to it." Demurrer was sustained to the last amendment; plaintiff declined to plead further and the petition as amended was dismissed.

A considerable portion of briefs go to a discussion of the reasons why the Court sustained demurrers, a matter not divulged by the record. Appellee analyzes pleadings and assumes the moving reasons. Appellant apparently concedes that the original petition was vulnerable, but insists that the amended pleadings aptly stated a cause based on an implied warranty; this is the only question we are called upon to determine.

Under the contract appellee agreed to "insulate" the property against attack of termites according to the Bruce Specifications. We shall not undertake, as do both parties, to define the word. Appellee seems to have given it meaning in the advertisement. It represented that insulation provides a complete chemical barrier throughout the understructure and surrounding grounds. "This blocks every possible approach by termites and destroys such as remain in the wood," performance guaranteed by the insurer.

Appellee contends that there was no warranty by appellees in the contract, except as to re-insulation without cost. We take this to mean that there was no warranty embodied in the contract as to efficacy of the chemical when applied according to the Bruce formula. If there be no express warranty, whatever may be fairly implied by the terms of the agreement is in the eyes of the law embodied in the agreement. One who undertakes to accomplish a certain result agrees by implication to do everything to accomplish the result intended by the parties. Am. Jur. Contracts, V. 12, Sec. 239.

Both parties seem to treat the transaction involved as a sale, since they cite cases which involved contracts arising under our Uniform Sales Law. KRS Ch. 361. There was a sale, but merged with a contract for performance. If the matter be treated under the sales law, then by reason of Sec. 361.150(1) (6) KRS, and the numerous decisions under that section, there can be no

doubt but that there was an implied warranty, even though there be an express warranty, and there existed no inconsistency. It may be noted that in many cases applying that section, we have held that it originated from and was declaratory of the common law. The latest case so holding is Snead v. White, 306 Ky. 587, 208 S. W. 2d 749.

Under the pleadings there were such representations and reliance as would create an implied warranty, if indeed the representations by advertisement did not create a warranty the same as if expressed in the contract. We find authority for this conclusion in Turner v. Central Hardware Co., 353 Mo. 1182, 186 S. W. 2d 603, 158 A. L. R. 1402. In that well considered case it was held that a positive affirmation of fact by a seller relating to the subject matter, may constitute an express warranty if it induced the sale and the buyer relies upon it. All the circumstances of a sale, including advertisements, and ensuing conversations are to be considered in determining whether or not there was a warranty, or were mere expressions of opinion not amounting to a warranty. Surely the advertisement and representations here were more than the ordinary ''puffing,'' sales talk or expressions of opinion. It was also said in the Turner case that a complaint which alleges facts showing positive representations by the defendant, upon which the plaintiff relied, sufficiently states a cause for breach of warranty even though it does not appear from the pleading whether an express or implied warranty is relied upon.

In cases where sales were not particularly involved we have held that an implied contract may arise from conduct, representations, acts or words, showing intention of the parties. Dorton v. Ashland O. & R. Co., 303 Ky. 279, 197 S. W. 2d 274. Cases relied upon by appellee, in correctly contending that where there is an express contract pleaded, plaintiff may not rely upon an implied contract, but they do not hold that where there is plead an express contract the plaintiff may not abandon the original cause, or by amendment maintain his action on an implied contract. The cases which lay down the first principle (as relied on) are Fruit Growers Express Co. v. Citizens Ice Co., 271 Ky. 330, 112 S. W. 2d 54, relating to quantity, not quality, and Moore v. Stan-

fill, 235 Ky. 372, 1 S. W. 2d 610. It may be noted that we stated the rule, but held that plaintiff could not rely upon an implied contract because he had sued on an express one and had failed to amend his pleading to conform to proof. Here, according to appellee's view, plaintiff abandoned his cause based on express contract, and by amendments transformed it into one based on implied warranty, and we are of the opinion that the Court was in error in sustaining demurrers, hence the judgment is reversed with directions to set aside the sustaining orders and for consistent proceedings.

Judgment reversed.