642 P.2d 167

**LOVINGTON CATTLE FEEDERS, INC., and Buddy Taylor, Petitioners,**

v.

**ABBOTT LABORATORIES, Respondent.**

No. 13710.

Supreme Court of New Mexico.

Feb. 24, 1982.

Rehearing Denied March 15, 1982.

Thomas E. Horn, San Francisco, Cal., Burnett & Ahders, Warren Burnett, Odessa, Tex., for petitioners.

Atwood, Malone, Mann & Cooter, Robert E. Sabin, R. D. Mann, William P. Lynch, Roswell, for respondent.

OPINION

SOSA, Senior Justice.

This cause is before us on a writ of certiorari directed to the Court of Appeals of New Mexico, which reversed a jury verdict of $100,000.00 in favor of the plaintiffs. We reverse the Court of Appeals and affirm the trial court.

The issues on certiorari are: [1]

1. Whether there was sufficient evidence for the trial court to submit the issue of express warranty to the jury.

2. Whether there was sufficient evidence of a defect in the vaccine for the trial court to submit the issue of liability to the jury.

3. Whether the trial court erred in submitting the damages issue of decreased weight gain to the jury.

4. Whether the trial court erred in denying Abbott Laboratories' motion for remittitur.

Plaintiffs, Lovington Cattle Feeders, Inc., and Buddy Taylor (Taylor), purchased AMDAL vaccine directly from Great Plains Chemical Company, who had purchased the product from Abbott Laboratories. The vaccine was to be used to immunize cattle against the diseases of infectious bovine rhinotracheitis (IBR), bovine virus diarrhea and parainfluenza. Although the plaintiffs had inoculated their cattle with the vaccine in 1974, there was a major outbreak of IBR in their feedlot which killed some cattle and caused weight loss and sickness in others. As a result, plaintiffs brought suit against Great Plains [2] and Abbott Laboratories alleging that the AMDAL vaccine was defective and had not performed as represented. Subsequent to denying Abbott Laboratories' motion for directed verdict, the trial court submitted the case to the

jury on the theories of breach of express warranty, breach of the implied warranties of merchantability and fitness for a particular purpose, and strict liability in tort.

The jury returned a verdict awarding plaintiffs $100,000.00. Abbott Laboratories then moved for a new trial for a judgment notwithstanding the verdict, and, in the alternative, for a remittitur. The motions were denied, and Abbott Laboratories appealed. The Court of Appeals (Sutin, J., dissenting) reversed, holding that the trial court erred in denying Abbott's motion for a directed verdict.

Upon considering whether the trial court erred in not granting Abbott Laboratories' motion for a directed verdict, we must view all of the evidence, and inferences deducible therefrom, in the light most favorable to Lovington and Taylor, and disregard all conflicts in the evidence unfavorable to their position. *Skyhook Corp. v. Jasper*, 90 N.M. 143, 560 P.2d 934 (1977). If reasonable minds cannot differ on this evidence, then the trial court had the duty to direct a verdict in favor of Abbott Laboratories. *Owen v. Burn Const. Co.*, 90 N.M. 297, 563 P.2d 91 (1977).

I.

The requirements for creation of an express warranty are set forth in Section 55–2–313, N.M.S.A.1978:

(1) Express warranties by the seller are created as follows:

(a) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise;

(b) any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description;

(c) any sample or model which is made part of the basis of the bargain creates an

---

1. In view of our disposition of this case, the remaining issues raised by Abbott Laboratories at the Court of Appeals need not be discussed.

2. Great Plains was dismissed from the suit before the case went to the jury.

express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

■ Whether there was an affirmation of fact by the seller is a fact question. *Id.*, comment 3. All of the circumstances of a sale are to be considered when determining whether there was an express warranty or a mere expression of opinion. *King v. Ohio Valley Terminix Co.*, 309 Ky. 35, 214 S.W.2d 993 (Ct.App.1948).

At trial, plaintiffs contended that Taylor had decided to buy AMDAL from Abbott Laboratories because representatives of Abbott Laboratories and Great Plains had represented the product to him as "superior" to the product he used. Before switching to AMDAL, Taylor had used various vaccines, the last of which was BOVAPLEX. While using the various vaccines, 98 percent of the cattle Taylor inoculated did not contract the disease IBR.

Taylor testified that he was confronted on different occasions by representatives of Great Plains and Abbott Laboratories who wanted to induce him to change his vaccine and to use their product. Before ultimately deciding to switch to the AMDAL vaccine, Taylor met with Herman Sanders of Great Plains and Phil Graves and Dr. Myron Brown, both of Abbott Laboratories. During the course of their conversation, the representatives asked Taylor what kind of vaccine he was using, and then explained to him that they had a good vaccine, a superior vaccine, and that they could call on him and supply him regularly with the vaccine. Taylor summed up the meeting, stating: "Well, it [AMDAL] had been represented to me to be a superior vaccine manufactured by a reputable company, and would be delivered to me in the right manner in good condition and that's what I relied on."

Dr. Brown testified that they told Taylor that their vaccine "was as good and as effective [and] as safe as Jen Sal's vaccine," and that it was taken care of better than Jen Sal's.

Abbott Laboratories, however, argues that any representation that the vaccine was a "superior" product is nothing more than "puffing" and, as such, does not rise to the level of an express warranty. We do not agree.

■ Generally, when a seller asserts a fact of which the buyer is ignorant, and the buyer relies on the assertion, the seller makes an express warranty; but, when the seller merely states his opinion or his judgment upon a matter of which the seller has no special knowledge, or upon which the buyer may be expected to have an opinion and exercise his judgment, then the seller's statement does not constitute an express warranty. *Scovil v. Chilcoat*, 424 P.2d 87 (Okl.1967).

■ In the case at bar, the representatives of Abbott Laboratories asserted that AMDAL was as good and as effective as Jen Sal's. Taylor alleges that the statement was made with reference to the product he had been using. This, alone, was sufficient evidence for the trial court to allow the jury to consider whether Abbott Laboratories made an express warranty or simply expressed an opinion. Only when the party resisting the motion for a directed verdict fails to submit evidence to support a judgment in his favor is a directed verdict proper. *Brown v. Hall*, 80 N.M. 556, 458 P.2d 808 (Ct.App.), *cert. denied*, 80 N.M. 607, 458 P.2d 859 (1969).

Even if the representative's statement amounted to an opinion, the opinion amounts to a warranty if the statement became a part of the basis of the bargain. § 55–2–313, comment 8; *Hauter v. Zogarts*, 14 Cal.3d 104, 534 P.2d 377, 120 Cal.Rptr. 681 (1975). Here, there was evidence that Abbott Laboratories' representation that AMDAL was as effective as the vaccine Taylor was using did, in fact, become a part

of the basis of the bargain. But for the fact that Taylor relied on the representations that the AMDAL vaccine was as effective as the product he was using, and the fact that Great Plains could better serve him, Taylor would not have purchased AMDAL.

The trial court did not err in denying Abbott Laboratories' motion for a directed verdict on the issue of express warranty.

## II.

■ Abbott Laboratories also argues that there was insufficient evidence on the issue of the existence of a defect in the vaccine for the trial court to have submitted the case to the jury. We disagree.

Plaintiffs in this case could prove, either by direct or circumstantial evidence, that the vaccine was defective. *Carter Farms Company v. Hoffman-LaRoche, Inc.*, 83 N.M. 383, 492 P.2d 1000 (Ct.App.1971). Under the circumstantial evidence rule, if the facts and circumstances, together with the reasonable inferences therefrom, indicate with reasonable certainty that the product was defective and caused plaintiff's damages, then plaintiff should prevail. *Id.*

From 1972 through 1974, Taylor inoculated his cattle against IBR with AMDAL. He had vaccinated his cattle for IBR for ten years prior to that with other vaccines and had experienced a disease rate of one to two percent.[3] Once Taylor began using AMDAL, he noticed a higher incidence of disease which, in 1974, culminated in the worst outbreak of IBR. Dr. Farr, who has a bachelor's degree in veterinary science and a degree of Doctor of Veterinary Medicine, was called in to help Taylor with his problem. Dr. Farr conducted an investigation, including a review of Taylor's vaccination methods and post-mortem examinations. It was his conclusion that the outbreak was IBR. As a result, the cattle were revaccinated with a pure IBR vaccine. After this vaccination, the disease began to clear up. In Dr. Farr's opinion, the AMDAL vaccine was defective.

However, it is Abbott Laboratories' contention that, since they were required to, and did, fully meet and comply with government regulations for the production of IBR vaccine, both before and after the outbreak of IBR at Taylor's feedlot, they were entitled to a directed verdict. We do not agree with this contention. The evidence in this case establishes that weight loss, sickness and death of the cattle followed the use of the AMDAL vaccine, and, although government regulations had been satisfied, whether the AMDAL vaccine was defective remains a question for the jury. *See Brown v. Globe Laboratories*, 165 Neb. 138, 84 N.W.2d 151 (1957).

We conclude that there was sufficient evidence of defect in the AMDAL vaccine for the trial court to have submitted the issue to the jury.

## III.

■ Abbott Laboratories next argues that the plaintiffs failed to sustain their burden of proving the decreased weight gain element of damages with reasonable certainty, and, as such, the trial court erred in submitting this issue to the jury.

We agree with Abbott Laboratories that damages, to be recoverable, must be proven with reasonable certainty and not be based upon speculation. *Winder v. Martinez*, 88 N.M. 622, 545 P.2d 88 (Ct.App.1975), *cert. denied*, 89 N.M. 6, 546 P.2d 71 (1976). However, mathematical certainty is not required, *Nosker v. Western Farm Bureau Mutual Ins. Co.*, 81 N.M. 300, 466 P.2d 866 (1970); rather, a damage award need only be reasonably certain and supported by substantial evidence. *Rayco Drilling Company v. Dia-Log Company*, 81 N.M. 101, 464 P.2d 17 (1970).

We have reviewed the record and find substantial evidence to prove the element of decreased weight gain with reasonable certainty. Mrs. Taylor, who kept daily records of the feedlot operation, testified as to the

---

3. On the average, an IBR vaccination will immunize 80 to 98 percent of the cattle against the disease; some cattle will not respond for various reasons.

damages. She testified that the cattle which had symptoms of IBR remained on feed for a substantially longer period of time and gained weight at a substantially lower rate than did cattle in the year following the major IBR outbreak. After testifying as to her method of computing weight gain, Mrs. Taylor testified that, from November 1, 1972, through July 31, 1973, the 4,978 cattle which were vaccinated with AMDAL gained 0.39 pounds, per animal, per day, less than the cattle after the IBR outbreak. She then multiplied that figure by the average days on feed to calculate the total poundage lost for that year, and multiplied the product by the average market sales price per pound. The loss was computed at $151,671.68 for November 1, 1972, through July 31, 1973, and $141,336.01 for August 1, 1973, through July 31, 1974. These figures do not include the damages for the cattle which died or were sold on the rail and other expenses. Yet, the jury returned a verdict for $100,000.00. Presumably, the jury weighed all of the evidence and took into consideration the variables affecting weight gain which were introduced by Abbott Laboratories. As such, the jury returned a lesser amount of damages than testified to by Mrs. Taylor.

The trial court properly submitted the issue of weight gain and other damages to the jury.

## IV.

Finally, Abbott Laboratories contends that the trial court erred in denying its motion for a remittitur.

After deliberating for some time, the jury returned a verdict in favor of plaintiffs. Written on the verdict form was an itemization of the damages. After seeing the verdict, the trial court, without objection by either party, prepared a new verdict form and directed the jury to resume deliberations. The jury did so and subsequently returned a verdict in the same amount, without an itemization of the damages awarded.

Abbott Laboratories now contends that the trial judge should have remitted $14,-

156.37, which represented medical expenses never proven at trial. Abbott Laboratories obtained this figure from a review of the first verdict form. However, the first verdict form was thrown out by the trial judge, and the case was resubmitted to the jury. Judgment was then entered pursuant to the second verdict. Because Abbott Laboratories did not object to the resubmission of the case to the jury, the issue was not preserved for review. *See Scott v. Brown*, 76 N.M. 501, 416 P.2d 516 (1966).

The Court of Appeals is reversed, and this cause is remanded to the trial court to enter judgment in favor of plaintiffs for $100,000.00.

IT IS SO ORDERED.

PAYNE and FEDERICI, JJ., concur.

RIORDAN, J., concurring in result.