RENDERED:  FEBRUARY 25, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0052-MR

JEFFREY FRANCK　　　　　　　　　　　　　　　　　　　APPELLANT

v.　　　　　　APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE OLU A. STEVENS, JUDGE
ACTION NO. 18-CI-003251

FAMILY SELECT INSURANCE, LLC;
AMANDA TURTON; AND
TRAVELER'S HOME AND MARINE
INSURANCE COMPANY　　　　　　　　　　　　　　　　　APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  DIXON, McNEILL, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  This case involves what kind of duty independent

insurance companies and their agents owe consumers.  Jeffrey Franck appeals from

the Jefferson Circuit Court's grant of summary judgment to Family Select

Insurance, LLC (Family Select) and insurance agent Amanda Turton (collectively

appellees) on Franck's negligence and breach of fiduciary duty claims based on an

automobile insurance policy he obtained through them, but which ultimately did not cover a collision.

Franck argues that the appellees' advertisements and Turton's interactions with him created a duty for them to advise him: (1) that the "comprehensive" automobile insurance he specifically requested did not include "collision" coverage; and (2) that he should purchase "collision" coverage also. Franck also argues that appellees failed to follow his instructions by failing to obtain "complete" insurance coverage for his automobile, per his request, and should have understood that his later request for "comprehensive" coverage was for "comprehensive" in the ordinary sense of the word, rather than pertaining to the limited definition used in the insurance industry, wherein coverage that is "comprehensive" does not include "collision" coverage.

We agree with the circuit court that summary judgment was properly granted because: (1) appellees' advertisements and course of dealings with Franck failed to create a duty to advise him as to what insurance coverage he should obtain; (2) Franck's request for "complete" coverage cannot be interpreted as a request for optional coverage or for advice; (3) Franck's request for "complete" coverage was modified by his later request for "comprehensive" coverage; (4) Franck got the exact "comprehensive" coverage he requested along with the statutorily required coverages; and (5) the claimed discrepancy between the kind of

coverage Franck requested and obtained, compared to the kind he desired, would have been revealed had he properly read and reviewed his application and policy, as he was obligated to do. Therefore, we affirm.

In January 2017, Franck contacted Family Select after visiting its website. He then spoke to Turton about automobile insurance coverage for his six vehicles: a 2011 BMW 535i, a 2007 Mustang GT, a 2013 Mustang GT, a 1999 Galant, a 2003 Silverado, and a 2002 Frontier. According to Franck he told Turton he wanted "complete" coverage for four of his six vehicles, including the BMW, and "liability" coverage for the other two.

Franck then faxed Turton a spreadsheet regarding the insurance coverage he wanted for each vehicle. At the top he requested, "[w]ould you please give us an insurance quote on the following information?" Franck then provided information for each vehicle including who should be listed as the driver, what deductible he wanted and, for each vehicle, requested either "comprehensive" or "liability" coverage.

In response, Turton sent Franck an application for insurance which listed each vehicle. Under "coverages/premiums" for the BMW, the line for "collision" did not show any premium charge, in contrast to the lines for the covered items of: "bodily injury," "property damage liability," "personal [injury] protection (PIP)," "uninsured motorists," "[underinsured] motorists," and

"comprehensive / OTC." The line for "collision" also did not contain anything in the space for "DED" (deductible) next to it, whereas "comprehensive / OTC" did list a deductible. The two vehicles for which Franck only requested "liability" did not have any premiums or deductibles for "comprehensive" listed.

After receiving a quote from Turton, Franck obtained automobile insurance for his six vehicles from Traveler's Home and Marine Insurance Company (Traveler's). The BMW had insurance coverage for "bodily injury," "property damage," "basic personal injury protection," "comprehensive," "uninsured motorists bodily injury" (UM), and "underinsured motorists bodily injury" (UIM). The cost for comprehensive insurance was significantly lower than the cost of collision insurance would have been.

Later, Franck's wife obtained "collision" coverage for another vehicle, the 2007 Mustang, through communications with Turton. We decline the appellees' invitation to consider this as proof that Franck accordingly must have known the difference between "comprehensive" and "collision" coverage.

In March 2018, Franck's BMW was involved in a collision requiring about $14,064 in repairs. Franck submitted a claim to Traveler's which was denied on the basis that he did not have collision coverage.

Franck filed a complaint and then an amended complaint against Family Select, Turton, and Traveler's alleging: (1) Family Select violated

-4-

Kentucky Revised Statute (KRS) 367.170, Kentucky's Consumer Protection Act (KCPA); (2) Family Select and Turton committed fraudulent or negligent misrepresentation; (3) Family Select, Turton, and Traveler's committed breach of contract; (4) Family Select and Turton committed negligence; and (5) Family Select and Turton committed breach of fiduciary duty. He also alleged that Traveler's is vicariously liable for Family Select's and Turton's actions under counts two, three, and four, and Family Select is vicariously liable for damages caused by Turton.

Family Select and Turton moved for summary judgment on all counts. The circuit court granted the motion for summary judgment on the basis that: (1) Franck had a duty to read his automobile policy; (2) Franck could not prevail on his consumer protection action claim because he did not suffer a loss from an unlawful act by being provided the coverage he requested, with his request for the "best" coverage being too generic to amount to a request for optional coverage; (3) Franck's fraud claim required a misrepresentation but he could not show there was a misrepresentation where he requested "comprehensive" insurance coverage and it was provided; (4) Franck could not establish an express contract to provide collision coverage so there was no viable claim for breach of contract and the contract term "comprehensive" having a different common meaning showed "[a]t best, [Franck] was operating under an unfortunate unilateral mistake for which

there is no basis for relief[;]" (5) Franck could not show any of the grounds for an implied duty to advise where he did not pay any amounts above and beyond the policy premium, had no extended course of business with Family Select and Turton, and made no showing that he requested insurance advice; and (6) there could be no breach of fiduciary duty where automobile insurance agents in Kentucky do not owe a fiduciary duty to an insured.

Pursuant to Kentucky Rules of Civil Procedure (CR) 56.03, summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

"The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App. 1996). Summary judgment "should only be used 'to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant.'" *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky. 1991) (quoting *Paintsville Hospital Co. v. Rose*, 683 S.W.2d 255, 256 (Ky. 1985)).

-6-

On appeal, Franck argues that appellees owed him a common law duty to advise him of the availability and desirability of insurance coverage for collisions for two reasons: "(1) the appellees held themselves out as insurance advisors or counselors in their advertisement and correspondence with Mr. Franck; and (2) the appellees created a special relationship of trust and confidence with Mr. Franck through a lengthy course of dealing." During oral argument, Franck focused exclusively on the first ground for the creation of a duty to advise. Franck also argues that appellees failed to follow his instructions where he requested full, all-inclusive coverage and should have understood that his request for "comprehensive" coverage was for "comprehensive" in the ordinary sense of the word. In the conclusion of his appellate brief, Franck argues that he "has claims under theories of negligence, fraud and/or misrepresentation, breach of contract, breach of fiduciary duty, and violation of the consumer protection act. Because the appellees' representations and advertisements created duties of care, the appellees were not entitled to summary judgment."[1]

---

[1] In his prehearing statement, Franck states that the insurance agency lured him in "by its advertisements and assurances it would assist its customers to find the best insurance coverage available," but "[t]he agency negligently failed to procure the requested or appropriate coverages, including coverage for a collision, resulting in a loss." He states the proposed issues to be raised on appeal are:

> 1) did the trial court err in granting summary judgment?; 2) was summary judgment proper?; 3) was summary judgment premature due to incomplete and evasive discovery?; 4) did appellees owe a legal duty to appellant?; 5) should there be an adverse inference

Appellees argue that Franck's appellate brief only supports two of his five claims for liability against them: his negligence claim that "Turton and Family Select breached duties of ordinary care by not advising Franck to place collision coverage on his BMW" and his breach of fiduciary claim that Turton and Family Select had a duty to advise him to purchase collision coverage. They argue that Franck has waived his other claims because that first argument "doesn't support his KCPA claim because it doesn't tend to prove that the defendants acted unlawfully[,]" and similarly Franck "doesn't argue in support of his fraud and misrepresentation claims[,]" and "doesn't argue in support of his breach-of-contract claims." However, appellees address each claim raised in Franck's complaint in arguing that summary judgment was properly granted to them.

Franck does not contest in his reply that his appeal is limited to these two issues. However, he again repeats in the conclusion section of his reply brief that he is entitled to pursue each claim listed in his complaint. During oral argument, when Franck was asked whether he was waiving his KCPA claim, he stated that he was not waiving this claim as if the appellees did not provide appropriate advice they were providing false advertising on their website.

---

drawn against appellees for their discovery violations?; and 6) is an insured's failure to read a policy a defense against a negligent agent?

We must first, therefore, consider which of the circuit court's grounds for granting summary judgment are being challenged on appeal. "Any part of a judgment appealed from that is not briefed is affirmed as being confessed." *Osborne v. Payne*, 31 S.W.3d 911, 916 (Ky. 2000).

We agree with appellees that Franck has not properly challenged the dismissal of his KCPA claim, fraud and misrepresentation claims, and breach of contract claim in his appellate briefs. Therefore, the dismissal of these claims against the appellees should properly be affirmed. We agree with the circuit court's reasoning for dismissing these claims and do not believe any further analysis is required. Furthermore, our analysis on the remaining issues provides additional support for the granting of summary judgment on the waived issues.

As to Franck's argument that appellees owed him a common law duty to advise him of the availability and desirability of "collision" insurance coverage, we do not agree that Family Select's website advertisements, Turton's conversations with Franck, and Turton's correspondence to Franck had the effect of making the appellees assume an implied duty to advise Franck.

A negligence action requires a party to establish: "(1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury." *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992).

As explained in *Mullins*, "[o]ther jurisdictions have found that, generally, an insurer may assume a duty to advise an insured when: (1) he expressly undertakes to advise the insured; or (2) he impliedly undertakes to advise the insured." *Id.* at 248.

> An implied assumption of duty [to advise about insurance coverage] may be present when: (1) the insured pays the insurance agent consideration beyond a mere payment of the premium; (2) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on; or (3) the insured clearly makes a request for advice.

*Id.* (citations omitted). In dicta, *Mullins* noted:

> [W]hile appellants fail to produce facts evidencing an express assumption of duty to advise, such a duty may be present if the company, or agent, represents directly, or by advertising, that it will assume responsibility to advise the customer as to what is needed. *See* 2A C.J.S. *Agency,* § 54. When an insurance company or an agent "holds itself out" to the public as a counselor and/or advisor, the scope of duty to advise is commensurate with the obligation assumed by the insurance company or agent selling the insurance.

*Id.* at 249.

Franck relies on *Mullins* to support his argument that Family Select and Turton assumed the duty to advise him to purchase collision coverage based upon Family Select's advertising and Turton's extended course of dealing with him. Franck makes much of language on the Family Select website that it held

-10-

itself out as a trusted and experienced insurance advisor to help consumers find "quality insurance" so that they can "sleep better at night" and would seek to help its customers find the best insurance at the best price, the "right insurance coverage." In his oral argument, Franck stated that he selected and relied upon Family Select because of its website advertising that it would give him advice. In his appellate brief, Franck also emphasizes that he relied on Turton's professional guidance, advice, and recommendations in purchasing the recommended coverage from Traveler's, and in the renewal notice where Turton advised she had reviewed his policy and that he had the "best coverage."

Franck has "cherry picked" the phrases from Family Select's webpage that he believes best establish that Family Select had a duty to advise him about coverage. We believe the overall tenor of the advertisement was that Family Select was experienced and could get customers the "best price" because as an independent agency it could "offer many choices with our wide selection of 'A' rated insurance carriers which increases our likelihood at finding you the right insurance coverage and saving people hundreds of dollars."[2] We believe its

---

[2] The whole text of the website advertisement which Franck argues shows that Family Select undertook to advise him as to what insurance he should select reads as follows:

> **Why Us**
>
> Relationships, **Quality & Price**

-11-

references to finding customers "quality insurance" so that they can "sleep better at night[,]" referred to Family Select's ability to shop around for affordable coverage with "A" rated insurance carriers, rather than promising to advise potential clients about what specific types of coverage they should obtain.

As *Mullins*' discussion of advertising potentially creating a duty to advise a consumer as to what insurance is needed was not addressing an issue in that case, *Mullins* did not explore what kind of advertising language would be sufficient to create such a duty. Therefore, Franck argues that Family Select's

---

We feel a customer relationship should be based on earned trust and an experienced track record that warrants that trust. It should also be based on confidence where you know you're getting quality insurance coverage so you can sleep better at night. Family Select Insurance is a family owned and operated Louisville based Independent Insurance Agency serving both Kentucky and Indiana customers. With over 33 years of experience, our job is to simplify the shopping process so that finding the best auto, homeowners or renters insurance at the best price is quick and easy. Unlike captive insurance agents like St. Farm [sic] and Allstate who offer only one insurance company with one price, we offer many choices with our wide selection of "A" rated insurance carriers which increases our likelihood at finding you the right insurance coverage and saving people hundreds of dollars. That's why our slogan is, "Because Choice Matters." Also, in most cases you can start insurance without having to come to our office. Perhaps that's why we are the fastest growing insurance agency in Kentuckiana. Contact us to find out if you can save hundreds, too.

(Bold in original, but size differential of font in headings omitted). At the top of the page in addition to the name of the insurance company, a logo and a menu, was the statement: "**SPEAK TO AN AGENT FOR OUR BEST PRICE**" followed by a prominent phone number.

advertising qualified, while the appellees argue that it does not. Accordingly, we explore what kind of advertising could create a duty.

Although not directly on point, *King v. Ohio Valley Terminix Company*, 309 Ky. 35, 40, 214 S.W.2d 993, 996 (1948), is instructive on how advertisements can potentially create duties. In *King*, the Court was evaluating whether a case was appropriately dismissed after the plaintiff, whose home had sustained increased damage by termites after treatment with Terminix insulation, amended his pleadings to assert that an advertisement had created an implied warranty that treatment with Terminix insulation would stop the termites in his house. The plaintiff had claimed he entered into a contract for treatment and paid an annual sum to renew the warranty based on the following language:

> Terminix insulation will stop the attack of termites and prevent further damage. . . . Performance of each Terminix contract is guaranteed by E. L. Bruce and Company and insured by Sun Insurance Company.
>
> Bruce Terminix insulation provides a complete chemical barrier throughout the under-structure and adjacent grounds. This blocks every possible approach of termites from their nests in the ground. Any termites that may remain in the wood above cannot get back to the earth for moisture and soon die. . . .

*Id.* at 37-38, 214 S.W.2d at 994. The company argued that there was no express warranty in the contract "as to efficacy of the chemical when applied according to

-13-

the Bruce formula" but only an agreement to reinsulate without cost. *Id.* at 39, 214 S.W.2d at 995.

The Court opined:

If there be no express warranty, whatever may be fairly implied by the terms of the agreement is in the eyes of the law embodied in the agreement. One who undertakes to accomplish a certain result agrees by implication to do everything to accomplish the result intended by the parties. Am.Jur. Contracts, V. 12, Sec. 239.

*Id.* The Court discussed how "the advertisement and representations [in that case] were more than the ordinary 'puffing'" and could create an implied warranty; therefore, it determined that dismissal was inappropriate. *Id.* at 40, 214 S.W.2d at 996.

In contrast, ordinary advertisements do not create any sort of duty. In *Trotter v. State Farm Mutual Automobile Insurance Company*, 297 S.C. 465, 472, 377 S.E.2d 343, 347 (Ct. App. 1988) (a case cited repeatedly by *Mullins* to establish the potential duties of insurance agents), the Court rejected the argument that the advertisements the insured had seen "which in effect said that State Farm's agents are well trained and highly qualified individuals, who will advise people with respect to their insurance needs" were enough to make the company take on an additional duty. It explained: "Ordinarily, an advertisement is a mere invitation to the public to contact the advertiser and request its services, as opposed to an offer to perform those services. State Farm's advertisements were nothing more

than invitations to the public." *Id.* (citation omitted). The Court additionally pointed out that the insured "produced no evidence to show he made a clear request which would put [the insurance agent] on notice that his advice was being sought and relied on." *Id.*

Similarly, in *Lisa's Style Shop, Inc. v. Hagen Insurance Agency, Inc.*, 181 Wis. 2d 565, 574, 511 N.W.2d 849, 853 (1994), although the insured argued that the agent held himself out as an agent based on advertisements and other materials, the Wisconsin Supreme Court rejected that interpretation, explaining:

> For the most part [the agent's] own advertisements are merely standard ads for insurance agents. He only mentions the word "advice" in one of these ads. None of the ads claim that [he] is an insurance expert or that he will advise clients about the appropriate limits of coverage. For the most part, [his ads] stress that independent agents are able to choose between policies to find the best price – just as [he] did for [the insured].
>
> [The ads from the national organization of insurance agents, the Independent Insurance Agents, that the agent was a member of and associated with by using the emblem and phase of "serves you first" in his advertisements] . . . are similar to [the agent's] personal ads. One of them, featuring actor Raymond Burr, states that an independent agent can "offer you expert advice on the best coverage at the best price." Again, the emphasis of the ad is that independent agents, unlike captive agents, represent more than one insurer and therefore can choose between various policies.

In another Wisconsin case, general advertisements that the agency "offers 'insurance of all kinds,' and, in quotation marks, that 'after the sale it is the

-15-

service that counts[,]'" have been rejected as creating a duty by representing that the agent was "a highly-skilled insurance expert[.]" *Tackes v. Milwaukee Carpenters Dist. Council Health Fund*, 164 Wis. 2d 707, 715, 476 N.W.2d 311, 314 (Ct. App. 1991) (some internal quotation marks omitted).

Having considered the website advertisement that Franck relies upon for the creation of a duty, we believe it is very similar to the advertisements which were not deemed sufficient in *Lisa's Style Shop*, *supra*, and contained nothing like the specific assurances in *King*, *supra*. We agree with the circuit court that the general statements on the Family Select website were insufficient to create any affirmative duty to advise Franck as to what specific coverage would be right for him.[3] The "right insurance coverage" will vary widely between consumers depending upon their comfort with risk and the amount of money they wish to pay.

Similarly, there is nothing specific in Franck's relationship with Turton that sets it apart from what other consumers could expect from her. There was no special relationship of trust and confidence created or a lengthy course of dealing based on Franck's applying for and renewing a policy through Turton.

To the extent that Franck argues that he asked for advice in requesting complete coverage, we disagree that the interactions between him and Turton

---

[3] While we consider the KCPA claim to be waived, we note that there was no false advertising involved which could implicate the KCPA.

-16-

could be construed in such a way. Therefore, we do not believe that there is any issue of fact on assumption of a duty to advise precluding summary judgment here.

A request for "complete" coverage will not be treated as a request for every optional insurance coverage available. In *Flowers v. Wells*, 602 S.W.2d 179, 181 (Ky.App. 1980), the Court determined a request for "full coverage" does not constitute a request for optional insurance such as UIM. It noted that "[t]here are numerous optional coverages available" including "coverage for various deductible amounts on collision insurance" and opined "[w]e cannot conceive that a request for 'full coverage' would include all or even any optional coverages, unless specifically requested." *Id.* The Court held "that 'full coverage,' as used in relation to automobile or motor vehicle insurance, means insurance in such amount and for such coverage as is made mandatory by statute." *Id.*

The *Flowers* decision continues to be controlling law. *See Mullins*, 839 S.W.2d at 249 (recognizing the authority of *Flowers*); *Allstate Insurance Company v. Smith*, 487 S.W.3d 857, 862 n.17 (Ky. 2016) (noting a request for "full coverage" would not create a duty for the insurer or agent, citing *Flowers*).

Similarly, in *Mullins*, 839 S.W.2d at 249, the Kentucky Supreme Court considered whether a request for a "policy as good as I can get on liability and no-fault," was "a request for advice." It ultimately ruled that the driver's request for less than full coverage precluded optional coverages and "d[id] not . . .

-17-

creat[e] an express or implied assumption of a duty to advise." *Id.* In *dicta* the Court favorably noted:

> Other jurisdictions have interpreted a request for "full coverage," "the best policy," or "similar expressions as not plac[ing] an insurance agent under a duty to determine the insured's full insurance needs, to advise the insured about coverage, or to use his discretion and expertise to determine what coverage the insured should purchase."

*Id.* (quoting *Trotter*, 297 S.C. at 472, 377 S.E.2d at 347).

Additionally, even accepting that Franck verbally requested "complete" coverage and this should somehow be interpreted as something different than "full" coverage, he then either clarified or reformed his request by requesting "comprehensive" coverage in the chart he submitted to Turton. While Franck argued in oral argument that he intended his request for "comprehensive" to mean *everything*, there is no indication that Turton understood that or should have understood that from their interactions.

While an insurance agent would, per *Mullins*, owe the typical "obligation to deal in good faith and to carry out the principal's instructions[,]" all the evidence is that Turton fulfilled this obligation by obtaining the exact insurance that Franck requested. 839 S.W.2d at 248. Franck only specifically requested "comprehensive" coverage for the BMW, so Turton acted appropriately in obtaining that and the mandatory coverage required to operate all automobiles in

-18-

Kentucky. *See Flowers*, 602 S.W.2d at 180-81 (noting that uninsured motorist coverage, basic reparation benefits, and tort liability are mandatory). There is no obligation for an insurance agent to obtain the kind of insurance coverage that a consumer intended but did not clearly communicate to the insurance agent.[4]

Additionally, while Franck argues he was relying on Turton and Family Select to advise him, it does not appear that Franck sought advice. Franck never alleges that he asked Turton to explain different kinds of coverage terms and

---

[4] An example of this distinction can be seen in *Homestretch Logistical Solutions, Inc. v. Johnson Lawrence Walker Insurance Company*, No. 2014-CA-001255-MR, 2017 WL 729747 (Ky.App. Feb. 24, 2017) (unpublished) (which we discuss by way of example rather than as controlling precedent). There, the insured (Homestretch) argued that the insurance agency (JLW) was negligent in dropping insurance coverage from the incorrect vehicle, even though Homestretch had sent an email to JLW requesting it to drop the insurance coverage on the vehicle it was no longer leasing but named the wrong vehicle. The Court explained that "while acknowledging its own error, Homestretch attempts to shift liability to JLW based on a theory that JLW carelessly undertook its duty of ensuring Homestretch's insurance needs were satisfied. In essence, Homestretch asked the trial court – and now this Court – to save it from its own mistakes." *Id.* at *3. In rejecting this argument, the Court opined:

> JLW did exactly what it was tasked to do. It followed the explicit directions given by Homestretch to inform National to remove the 2011 Freightliner from the insurance policy. Contrary to Homestretch's assertion, we cannot say JLW breached its duty nor that its actions were the legal cause of any injury incurred by Homestretch. The financial losses sustained following the collision involving the uninsured 2011 Freightliner were occasioned solely because of Homestretch's own actions and instructions. Taking all of the factual allegations asserted as true, Homestretch has simply failed to make a *prima facie* showing of actionable negligence against JLW.

*Id.* Similarly, Franck explicitly asked for "comprehensive" insurance and "comprehensive" insurance is what he received. Any loss Franck suffered was based upon his own actions and instructions.

-19-

what they included, or for a recommendation on what kind of coverage he should get.

While Franck may not have been aware of this, "comprehensive" coverage has a particular meaning when it comes to automobile insurance policies. Generally, comprehensive coverage of an automobile covers "every case of damage to, or loss of, the vehicle except collision." 7 AM. JUR. 2D *Automobile Insurance* § 137 (footnote omitted). *See What is Covered by Collision and Comprehensive Auto Insurance?*, INSURANCE INFORMATION INSTITUTE, https://www.iii.org/article/what-is-covered-by-collision-and-comprehensive-auto-insurance (last visited Nov. 29, 2021) (explaining the differences in the two kinds of coverage). Therefore, comprehensive automobile insurance covers the same sorts of damage as comprehensive property insurance does, such as property damage caused by a falling tree. *See James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 278 (Ky. 1991) (discussing the reach of comprehensive general liability insurance as to property). However, of course, the main difference between a house and an automobile is that the automobile is driven and can collide with other automobiles and objects, hence the need for separate coverage for collisions.[5]

---

[5] As pointed out by the appellees during oral argument, not all drivers that request optional coverage, even comprehensive coverage, will also want collision coverage; people who consider themselves good drivers may want to assume the risk of having no collision coverage as collision

While we can certainly understand Franck's confusion and disappointment that he did not have the type of coverage he expected, Franck proceeded at his own peril by not requesting any clarification from Turton as to what "comprehensive" meant in the context of automobile insurance coverage. His very decisive request for "comprehensive" coverage or "liability" coverage on each vehicle in fact discouraged any contrary advice. Although ideally insurance agents would seek to proactively educate consumers about insurance coverage including the differences between various kinds of coverage such as collision and comprehensive coverage, they do not have a legal duty to do so.[6]

Additionally, Franck had a duty to read his policy application and policy and had a duty to ask questions if he noticed any possible discrepancies in the coverage he desired, compared with that requested or subsequently obtained.[7]

---

coverage is only necessary to protect them if they are at fault whereas comprehensive coverage protects them from damage which is out of their control.

[6] We also believe it would generally be in insurance agents' own self-interest to explain different insurance products, as by educating consumers they would be likely to increase customer satisfaction, gain loyalty, and could potentially sell additional products which would increase their commissions.

[7] As appellees emphasized during oral argument, Franck may also have had an additional contractual duty to read his policy because the Family Select Certification of Information, Content & Coverages form specifically stated that the insured, here Franck, should (as stated in larger font, in all caps, underlined, and in bold) "**READ CAREFULLY BEFORE SIGNING**", and Franck signed this paper which included bolded language such as, "**I agree and realize that it is my responsibility to read my policy to fully understand what is covered**[]" and "**I certify that I have reviewed the coverage(s) applied for and confirm the coverage(s) that I wish to obtain**."

-21-

Consumers are bound by their applications for insurance in what kind of coverage they have elected to receive. They are not excused from their rejections of uninsured motorist coverage by the fact that they relied on agents to obtain appropriate coverage, the agents filled out the applications, and the consumers failed to read the application they signed. *See Moore v. Globe American Cas. Co.*, 208 S.W.3d 868, 870 (Ky. 2006) (rejecting UM coverage through checked boxes on insurance application effective even though insured did not read application); *Midwest Mut. Ins. Co. v. Wireman*, 54 S.W.3d 177, 181-82 (Ky.App. 2001) (rejection of UM coverage by fifteen-year-old on application effective even though minor alleged the insurance agent failed to explain the UM coverage to him as insured was presumed to know the law and his mere lack of knowledge of the contents of the written contract for insurance could not provide a basis for avoiding it, and he could not rely on parol evidence to avoid the effect of his waiver). *But see Grisby v. Mountain Valley Ins. Agency, Inc.*, 795 S.W.2d 372, 374-75 (Ky. 1990) (providing in a contributory negligence case that in a complicated fire insurance contract, the failure of the insured to read the contract had no impact on whether the insurance agent negligently failed to provide the requested coverage by insuring the wrong property which resulted in the uninsured loss).[8] While

---

[8] There is, of course, a distinction between an insurance agent's error in failing to follow the directions of its insured as to dropping coverage on the wrong piece of property or vehicle (which is compounded by the insured's subsequent error in not reading the policy) and the

Franck may not have explicitly rejected collision coverage on his application through a checkmark, the blank for premium and deductible by the line on the application for such coverage acted as a rejection for this optional coverage and he is bound by it.

Accordingly, we affirm the Jefferson Circuit Court's grant of summary judgment to Family Select and Turton, which dismissed them from the case.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Zachary L. Taylor
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Zachary L. Taylor
Louisville, Kentucky

BRIEF FOR APPELLEES FAMILY
SELECT INSURANCE, LLC AND
AMANDA TURTON:

David E. Crittenden
Robert D. Bobrow
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEES:

Robert D. Bobrow
Louisville, Kentucky

---

insured's error (in directing that coverage be dropped on the wrong piece of property or vehicle). *See Homestretch*, 2017 WL 729747, at *3.