RENDERED: JANUARY 2, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2024-CA-1452-MR

ESTATE OF SELENA GILBERT LEE,
BY AND THROUGH MICHELLE
MAGGARD AND FRANK LEE, SR.
AS CO-ADMINISTRATORS OF THE
ESTATE OF SELENA GILBERT LEE                                    APPELLANTS


                         APPEAL FROM OLDHAM CIRCUIT COURT
v.                       HONORABLE JERRY CROSBY, II, JUDGE
                         ACTION NO. 19-CI-00509


JEFFREY CROSS                                                    APPELLEE

AND


NO. 2024-CA-1470-MR

STEPHANIE RENEA WALKER, CO-
ADMINISTRATRIX OF THE ESTATE
OF TAMARA RACHELLE
MEFFORD; CELESTIAL SHULER, AS
CO-GUARDIAN OF C.S., A MINOR;
STEVEN A. MEFFORD, CO-
ADMINISTRATOR OF THE ESTATE
OF TAMARA RACHELLE
MEFFORD; AND TONYA SHULER,
AS CO-GUARDIAN OF C.S., A
MINOR                                                           APPELLANTS

APPEAL FROM OLDHAM CIRCUIT COURT
v.                    HONORABLE JERRY CROSBY, II, JUDGE
ACTION NOS. 19-CI-00509, 19-CI-00546, & 19-CI-00599


JEFFREY CROSS                                                    APPELLEE



OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND EASTON, JUDGES.

EASTON, JUDGE:  This case presents the question of when a parent or legal custodian may be liable for the driving behavior of a seventeen-year-old child. Appellants brought claims in the circuit court against the legal custodian of a minor driver for injuries, including fatalities, sustained in a one-vehicle accident. They asserted several possible claims: the Family Purpose Doctrine, Negligent Entrustment, statutory liability under KRS[1] 186.590, and Negligent Supervision or negligence generally. The circuit court, by two separate Orders, granted summary judgment in favor of the minor driver's legal custodian on all causes of action.

Appellants challenge the circuit court's determination that there are no genuine issues of material fact to be decided by a jury at trial. In assessing this, we

---

[1] Kentucky Revised Statutes.

-2-

are required to evaluate the concept of "control" as it applies to some of the theories of liability asserted and the concept of foreseeability for a duty to arise for the more general negligence claim of Negligent Supervision. We affirm because, as a matter of law, the legal custodian did not own, maintain, furnish, or control the vehicle at issue, and it was not foreseeable that the minor driver would engage in the conduct that resulted in the deaths and serious injury to her passengers.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves consolidated civil actions[2] arising from a one-vehicle accident occurring on August 22, 2018, in which a car driven by then minor child, T.C. Genoa Somersall ("Genoa"), ran off Interstate 71 in Oldham County, flipping several times before coming to rest. Genoa had three passengers in her vehicle at the time of the accident: Tamara Mefford, Selena Gilbert, and Cheyanna Shuler. All three passengers were minors at the time. Tamara and Selena were killed, and Cheyanna (now an adult) sustained serious injuries.[3]

Appellants Michelle Maggard and Frank Lee, Sr., individually and as Co-Administrators of Selena's estate, filed a civil action against Genoa, her legal custodian Jeffrey Cross ("Cross"), and other defendants not party to this appeal.[4]

---

[2] Oldham Circuit Court Civil Action Nos. 19-CI-00509, 19-CI-00546, and 19-CI-00599.

[3] Kentucky Uniform Police Traffic Collision Report, R 19-CI-00546, Vol. I, p. 186-189.

[4] Oldham Circuit Court Civil Action No. 19-CI-00509.

Appellants Stephanie Walker and Steven Mefford, individually and as Co-Administrators of Tamara's estate, also filed a civil action against Genoa,[5] Cross, and other defendants not party to this appeal.[6]

By Order entered September 30, 2021, the circuit court entered partial summary judgment in favor of Cross on claims under the Family Purpose Doctrine, Negligent Entrustment, and KRS 186.590. By Order entered November 06, 2024, the circuit court entered summary judgment in favor of Cross on the remaining Negligent Supervision claim. The circuit court determined that, since all claims against Cross were fully resolved, and there was no just cause for delay, its orders as to Cross were final and appealable.[7] Tamara's estate filed an appeal and Selena's estate also filed an appeal. Appellants argue there are issues of fact regarding Cross's control of the vehicle which preclude summary judgment on the claims under the Family Purpose Doctrine, Negligent Entrustment, and KRS 186.590. Appellants further argue there are issues of fact regarding foreseeability which preclude summary judgment for Negligent Supervision.

---

[5] Appellants have settled all claims with Genoa, and she has been dismissed from the consolidated cases.

[6] Oldham Circuit Court Civil Action No. 19-CI-00546. Oldham Circuit Court Civil Action No. 19-CI-00599 concerns defendants not party to this appeal.

[7] Appellants' claims against the salesman and used car dealership which sold the vehicle to Genoa remain in the underlying circuit court case.

## STANDARD OF REVIEW

"The standard of review of a trial court's granting of summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. Summary judgment is proper when it appears that it would be impossible for the adverse party to produce evidence at trial warranting a judgment in its favor." *Andrew v. Begley*, 203 S.W.3d 165, 169 (Ky. App. 2006) (internal quotation marks and citations omitted). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Jenkins v. Best*, 250 S.W.3d 680, 688 (Ky. App. 2007).

## ANALYSIS

## FAMILY PURPOSE DOCTRINE

"In order to recover under [the Family Purpose Doctrine], a plaintiff must prove: (1) that the vehicle was owned or controlled by the defendant; (2) that the vehicle was maintained by the defendant for the use and benefit of members of his family; (3) that the vehicle was being used at the time of the incident by a person whom the defendant was under a legal obligation to support; and (4) that the person using the vehicle was doing so pursuant to a family purpose." *Griffith v. Kuester*, 780 F. Supp. 2d 536, 542 (E.D. Ky. 2011) (citations omitted).

Appellants cannot meet the key elements of this cause of action to survive summary judgment.

There is no dispute among the parties that the vehicle was owned and titled in Genoa's name only. She purchased this vehicle with her own funds received as child support from her biological father, social security benefits resulting from her mother's disability, and wages she personally earned working at a local restaurant. Prior to her employment, child support and social security benefits were direct deposited into a restricted account due to Genoa's status as a minor. Cross was the designated payee and would withdraw cash for Genoa each month. Sometimes Genoa would save some of her cash in a box at home; other times she would store it in Cross's safe to use as needed. Once Genoa started working, her wages were direct deposited into her account, and she had independent access to her funds with a debit card.[8]

After she started working, Genoa decided she wanted to buy a car. Cross told her, "You've got to save your money if you want to buy a car" because "I can't afford to buy you a car."[9] Although Cross accompanied Genoa the first time she saw the vehicle, he told her, "It's your money, you're purchasing it, it's

---

[8] Cross deposition, p. 91-92.

[9] Cross deposition, p. 95-96.

your decision . . . . I can't decide for you to buy it or not buy it."[10]  Appellants argue that, because Genoa had a prior wreck in Cross's vehicle, Cross wanted to title Genoa's vehicle and insurance in her name only in order to avoid potential future liability.

It is important to understand the undisputed family dynamics of this case.  Cross has no biological relationship with Genoa.  He is the ex-spouse of her maternal grandmother.[11]  Basically, Cross is Genoa's step-grandfather.  Around the age of 4, Genoa was the victim of abuse and began experiencing behavioral problems.[12]  Genoa's biological mother "gave" her to Vickie Farmer, the biological maternal grandmother.  At the time, Vickie was married to Cross, and they were awarded legal custody of Genoa.  Later, Vickie and Cross divorced.  Vickie "didn't want" Genoa, so she remained in Cross's home.[13]

While the deposition testimony of both Genoa and Cross indicates a strong familial bond, they functioned within the home more independently than a typical father/daughter or grandfather/granddaughter relationship.  For example, Cross did not visit Genoa at school, never accompanied her to the doctor, withdrew

---

[10] Cross deposition, p. 16.

[11] Cross deposition, p. 7.

[12] Cross deposition, p. 89.

[13] Cross deposition, p. 89-90.

her money in cash each month allowing her to budget and spend as she pleased, and never imposed a set curfew.[14]

Genoa was respectful of Cross's wishes and would defer to his judgment.[15] Still, their interactions were more consistent with the behaviors of roommates than that of a parent and child. There is simply no evidence to support a finding that the act of titling the vehicle and insurance policy in Genoa's name alone was solely an attempt to thwart potential future liability, although protecting oneself from liability for acts of others is not prohibited. Genoa was the sole purchaser, owner, and operator of her own personal vehicle that she purchased with her own personal funds. Cross had no ownership interest in the vehicle whatsoever.

Cross also did not control the vehicle. While Appellants argue that Cross had control over the vehicle in that he could allow or prevent Genoa from using it, Kentucky law requires more.

> Mere absence of title is insufficient to prevent the application of the 'family purpose doctrine.' If the head of a family provides and maintains an automobile for family use, he is liable for the negligent operation thereof by dependent members of his family notwithstanding the fact that the actual title to the automobile may be in the name of some other member of the family. The bare title is not the determining factor. It is the providing and the

---

[14] Cross deposition, p. 8-9.

[15] Cross deposition, p. 108.

> maintaining of the automobile for family purposes upon which the 'family purpose doctrine' is based. The underlying principle of this doctrine is, of course, that of principal and agent, and the fact that the legal title to the automobile is in someone other than the head of the family does not prevent its application. The element of control is implied from the purchase and maintenance of the automobile by the head of the family.

*Gray v. Golden*, 301 Ky. 477, 486, 192 S.W.2d 371, 375 (Ky. 1945).

Here, Cross neither purchased nor maintained the vehicle. Cross did not contribute his own personal funds to the purchase and was not present on the day Genoa executed the sale. Cross owned his own vehicle at the time of the accident.[16] Cross did not maintain Genoa's vehicle. While Cross testified that he had experience as a mechanic and "probably" changed the oil in the car,[17] two weeks prior to the accident Genoa personally paid to have the brakes replaced by a repair shop in Cumberland, Kentucky.[18]

Cross testified that he never told Genoa he would take her car away "because it was her car."[19] He did not control the use of the car. Genoa's use of the vehicle also was not for family purposes. Certainly, the unfortunate decision by Genoa to drive her friends to Michigan and back when the accident occurred

---

[16] Cross deposition, p.68.

[17] Cross deposition, p. 60.

[18] Cross deposition, p. 128-129.

[19] Cross deposition, p. 54.

served no family purpose. This was Genoa's own personal vehicle; she was its sole operator,[20] and she used it for her own purposes.

Cross's status as Genoa's legal custodian and his act of withdrawing funds from the restricted account to allow Genoa to purchase the vehicle are insufficient evidence of "ownership" or "control" of the vehicle for liability purposes. Unlike the husband in *Gray*, Cross did not purchase the vehicle with his funds and gift it to Genoa, and he did not pay for all gas, oil, and repairs. Cross did not make the vehicle available for general family use and exercised no control over it. Summary judgment was proper on this claim because it is impossible for Appellants to produce evidence at trial warranting a judgment in their favor under the Family Purpose Doctrine as a matter of law.

## NEGLIGENT ENTRUSTMENT

Negligent Entrustment is a broader concept than the Family Purpose Doctrine as it can apply outside of the family dynamic. Again, there are no genuine issues of material fact to support a finding that Cross owned or controlled the vehicle at issue in this case, which similarly precludes Negligent Entrustment.

In *Brady v. B. & B. Ice Co.*, 242 Ky. 138, 45 S.W.2d 1051, 1052 (1931), Kentucky's highest court explained that "ordinarily a person who owns or controls a motor vehicle is not liable for the negligence of one whom he permits to

---

[20] Genoa Somersall deposition, p. 47.

-10-

use it." (Citations omitted.) "There is, however, a well-recognized exception to this general rule, that where the owner lends or intrusts [sic] an automobile to a person who is incompetent to operate same or is so heedless or reckless as to render it a dangerous instrumentality when operated by him, the owner is liable if, at the time he lends or intrusts [sic] it, he knows of such person's incompetency or character and habits in that regard." *Id.* at 1052 (citing *Saunders Drive-It-Yourself Co. v. Walker*, 215 Ky. 267, 284 S.W. 1088 (1926)). Also, as we will discuss later in the context of foreseeability, there was insufficient evidence that Genoa had or would operate her car in an incompetent manner. The Negligent Entrustment claim also fails.

**KRS 186.590**

Negligence may also be based on KRS 186.590, but our analysis once again shows no control which might support liability under the statute. KRS 186.590 provides:

(1)    Any negligence of a minor under the age of eighteen (18) who has been licensed upon an application signed as provided by KRS 186.470, when driving any motor vehicle upon a highway, shall be imputed to the person who signed the application, if required, of the minor for the license. That person shall be jointly and severally liable with the minor for any damages caused by the negligence.

(2)    If a minor deposits or there is deposited in his or her behalf, a proof of financial responsibility in form and

-11-

amounts required by KRS 304.39-110, the person who signed the application shall not, while such proof is maintained, be subject to the liability imposed by subsection (1). If the minor is the owner of a motor vehicle, the proof of financial responsibility shall be with respect to the operation of that motor vehicle; if not an owner, then with respect to the operation of any motor vehicle.

(3)    Every motor vehicle owner who causes or knowingly permits a minor under the age of eighteen (18) to drive the vehicle upon a highway, and any person who gives or furnishes a motor vehicle to the minor shall be jointly and severally liable with the minor for damage caused by the negligence of the minor in driving the vehicle.

While Cross could be liable under Section (1) of KRS 186.590 as the person who signed Genoa's license application,[21] Section (2) removes any potential liability under Section (1) because Genoa obtained a policy of insurance in her own name and in amounts required by KRS 304.39-110.[22] There is no factual dispute between the parties that this policy of insurance existed.

Appellants argue that Cross is liable separately under Section (3) for "giving or furnishing" the vehicle to Genoa. In *Falender v. Hankins*, 296 Ky. 396, 177 S.W.2d 382, 383-84 (1944), Kentucky's highest court held that this statute applies to all persons placing minors in charge of motor vehicles, regardless of

---

[21] Genoa Somersall deposition, p. 146.

[22] Certified copy of Genoa's insurance policy attached as Exhibit 4 to Motion for Summary Judgment.

ownership, with the exception of one who sells a motor vehicle to a minor. In *Peters v. Frey*, 429 S.W.2d 847, 849 (Ky. 1968), the court noted that "[b]y making the person liable, who enables a minor to operate a motor vehicle, an additional source for the recovery of damages is provided."

But Cross is not liable under KRS 186.590(3) because the evidence fails to support a finding that he gave or furnished the vehicle to Genoa. He did not purchase the vehicle; he was not the owner of the vehicle; he did not provide it to Genoa or control its use. This was Genoa's own personal vehicle and the evidence fails to support a finding that Cross "furnished" the car to Genoa sufficient to make him jointly and severally liable for its negligent use under KRS 186.590(3).

## NEGLIGENT SUPERVISION

A negligence action requires proof of: (1) a duty on the part of the defendant; (2) a breach of that duty; and (3) a consequent injury, which consists of actual injury or harm, plus legal causation linking the defendant's breach with the plaintiff's injury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88-89 (Ky. 2003) (citations omitted). "The question of duty presents an issue of law. When a court resolves a question of duty it is essentially making a policy determination." *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 248 (Ky. 1992) (citations omitted).

The essence of a Negligent Supervision claim is that the parent's failure to exercise due care has made it possible and probable that the child would injure another. *Moore v. Lexington Transit Corp.*, 418 S.W.2d 245 (Ky. 1967). Kentucky's highest court has cited, with approval, the following description of a parent's duty to supervise or control the minor child:

> A parent is under a duty to exercise reasonable care to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>
> (a) knows or has reason to know that he has the ability to control his child, and
>
> (b) knows or should know of the necessity and opportunity for exercising such control.[23]

"The existence of a parent's duty to control a minor child largely turns on the foreseeability of the child's injurious conduct. For a child's act to be foreseeable, it is not necessary that the child have committed that same act before. A duty to control the child may also arise where the child previously has committed a *very similar act and* there are circumstances making it foreseeable that the child might later commit the specific act at issue." *Hugenberg v. W. Am. Ins. Co./Ohio Cas. Grp.*, 249 S.W.3d 174, 181-82 (Ky. App. 2006) (emphasis added).

---

[23] *Moore*, *supra*, at 248 (quoting RESTATEMENT (SECOND) OF TORTS § 316 (1965)).

This Court in *Hugenberg* held that parents owed no duty to a plaintiff because isolated incidents of their son's drinking in the past, his driving lesson with his mother, and being in an unsupervised house with peers who *may* have intended to drink were not enough for the parents to foresee he would drive drunk on the night of the accident that resulted in plaintiff's injuries. *Id*. at 183. Likewise, in this case, the negligent supervision claim fails because the accident at issue was not foreseeable.

Appellants argue that the accident was foreseeable because Cross did not trust Genoa in driving matters following a prior wreck while driving his vehicle. This argument mischaracterizes the nature of Cross's testimony. Cross explained the situation in his testimony as follows:

> Q. You indicated that before Genoa had left your house in the vehicle that evening you had her friend show you her driver's license?
>
> A. Yeah. She asked me could they run to Harlan to Huddle House I think is where they was supposed to be going and told me that Khalei had got her license and she held them out and I said well, that's good, I'm glad she finally got them, but then after the accident, the cop is the one that told me that the girl didn't have a license, that it was a permit that she had.
>
> Q. Did you have any conversation with Genoa about how or why she lost control of the vehicle that evening?
>
> A. She said the driver's side, when they come around the curve, the driver's side tire went flat, and that's what the cop, when they was doing something or other, he said

-15-

you, you could see the rim marks on the road where the tire went, the air, you know, went out of the tire.

Q. So did Genoa indicate that she was driving the vehicle appropriately and had the vehicle under control and the tire blew out and that is the reason?

A. Well, she just told me that they were coming back from Harlan and they come in the curve and it darted to the left into the ditch when the tire went, you know, blowed out is what I was told.

Q. All right. That is the last time that she ever drove your vehicle?

A. The Cobalt?

Q. The Cobalt.

A. Yeah, because where it busted the windshield and everything, I junked it out and bought the Cruze off of Dewey Cole and then I started only letting her drive if I was in the car with her. I said I don't trust you to let your friends go with you, so I would always take her and say you can only go if I feel like going with you.[24]

Cross testified that the wreck occurred because a tire blew out and not because of any reckless driving on Genoa's part. There is no evidence in the record to the contrary. Any trust issue Cross had after this wreck was related to whether Genoa's friends were truthful about their license status, and his decision to ride with her related to his own car, not hers. The prior accident resulted in a citation for a permit violation (she was riding with another permit holder, not a

[24] Cross deposition, p. 78, lines 13-25, p. 79, lines 1-25, p. 80, line 1.

licensed driver), careless driving, and seat belt violation. Both the permit violation and careless driving charges were dismissed, and Genoa entered a guilty plea to a seat belt violation only.[25] There is no evidence that Genoa's prior wreck was the result of careless or reckless driving such that Cross should anticipate the type of fatal accident that occurred in this case.

Appellants argue Cross knew Genoa drove once without insurance so he should have taken her car away. Cross testified that before Genoa got insurance on the Ford Focus he would pull his truck behind her vehicle to block it because "we know how teenagers are."[26] Although he couldn't say for sure, he did testify Genoa "might have" driven the vehicle over to a friend's house down the street before it was insured. This evidence is insufficient to establish foreseeability that Genoa could injure others by her driving behavior. It was about insurance. Genoa had insurance at the time of the accident which is the subject of this suit.

Appellants then argue the accident in this case was foreseeable because Genoa generally was not properly supervised. Cross testified that Genoa followed his rules and "normally if I told her she shouldn't do something, she wouldn't do it."[27] Cross testified that Genoa was a good kid and described her as a

---

[25] Genoa Somersall deposition, p. 154.

[26] Cross deposition, p. 53-54.

[27] Cross deposition, p. 108.

straight "A" student with no juvenile court problems or problems at school.[28] "[I]f I told her please don't do this or don't do that, she would listen to me and everything and, and be respectful and everything most of the time, so I never even had to discipline her or anything."[29]

Appellants further argue the accident in this case was foreseeable because Genoa would often take unauthorized trips out of town. Genoa testified that she would often travel to Corbin and Middlesboro with her friends.[30] But Cross was not aware of these trips and "learned later on she [was] doing a lot of things [he] didn't know about."[31] Such hindsight is not the standard for invoking liability under the theory of Negligent Supervision. We also note that there is no evidence (traffic citations or other accidents) of incompetent driving during these other trips about which Cross knew nothing. Foreseeability for an accident requires more than evidence of prior driving – it requires evidence of prior inept driving.

Appellants continue their argument that the accident in this case was foreseeable because Genoa had previously asked to go on a road trip with friends

---

[28] Cross deposition, p. 108-115.

[29] Cross deposition, p. 53.

[30] Genoa Somersall deposition, p. 96-97.

[31] Cross deposition, p. 13.

to Chattanooga. Cross told her she should not go, and she did not go.[32] Appellants argue that Genoa's desire to go on the long-distance trip to Chattanooga alone was evidence of a foreseeable risk of such a trip in the future, although, again this would not be evidence of prior incompetent driving.

What might be foreseeable from this prior event is that Genoa would ask Cross about any such trip and listen to his advice. That did not occur for this later and different trip. There is no evidence to establish that Cross was ever aware Genoa drove out of town without his permission before the accident at issue. Cross was never "on notice" that Genoa had a habit of sneaking out to travel out of town with friends. The undisclosed trips to Corbin and Middlesboro and her previous consideration of a trip to Chattanooga constitute insufficient evidence that a trip like the one involved in this case was the next logical step requiring control and intervention by Cross.

The specific circumstances surrounding the accident in this case were not foreseeable. The day before the accident, Genoa called Cross from school and asked if she could spend the night with Cheyanna. He agreed so long as she went to school the next day. He was not made aware she did not actually go to school

---

[32] Cross deposition, p. 30-31.

until he received a call from law enforcement that she had been involved in the fatal wreck.[33]

> Q. Did you see her when she went to school that morning I guess?
>
> A. No. She stayed all night with a friend in Harlan, and that's what shocked me so bad was the night before she spent with the little Shuler girl that's still in the hospital here in Louisville and she spent the night with her and the school didn't even call, they didn't call to let me know or, you know, they normally would call the house and say, you know, she was absent or tardy or whatever, but there was no call from the school, so I didn't realize anything until about 7:30 the police officer called me and told me she'd been in a wreck and I said where and he said Oldham County and I said what in God's name was they doing in Oldham County because, you know, she was supposed to have been in Harlan."[34]

Genoa also testified as to Cross's lack of knowledge of the girls' scheme to take the unauthorized trip out of state that resulted in this accident.

> Q. At what point in time did you guys make a decision to go on this trip that you guys went on?
>
> A. In the middle of school.
>
> Q. Some time during the middle of that school day?
>
> A. Yes.
>
> Q. How did that, how did that come about?

---

[33] Cross deposition, p. 45-46.

[34] Cross deposition, p. 45, lines 21-25, p. 45, lines 1-12.

A. There was a phone call in the office for me and I went and took it because at the time I didn't have service at HC, so—

Q. Who—

A. I took—

Q. Go ahead. I'm sorry. I didn't mean to cut you off.

A. So I took the phone call and it was Selena asking if I wanted to go to Michigan and I was skeptical at first because I wasn't having . . . she was going to ride back with Tamara because Tamara was getting a car at the time, so she would ride back with Tamara so Tamara had someone but then I would be alone and I didn't want to drive back alone, so I seen, I got one of my friend's phones and I texted Cheyanna and asked her if she would want to go and she said yeah.

Q. Okay. Did you tell Mr. Cross that you were going to Michigan?

A. No.[35]

Q. Okay. When you say time it correctly, did you all have a specific time that you guys needed to reach Michigan?

A. We had a whole time plan.

Q. Okay. What do you recall roughly about that time plan?

A. Well, our parents weren't going to know that we weren't going to school, so we had made a couple of time plans actually. The first one was we would be back, we would leave that night and we would be back in time for

---

[35] Genoa Somersall deposition, p. 103, lines 12-25, p. 104, lines 1-15.

me to make it to school at some point in the day, because if you don't the school will call your house phone, and I didn't want my grandfather to know I wasn't at school, so we were going to make it back to school I think before one o'clock, and then that changed and I was going to make it home by . . . or we were going to make it by twelve and then it changed and we were going to make it by four and then that changed and we decided that we would make it home whenever.[36]

The mere fact that Genoa was a 17-year-old teenager who owned her own car and was staying overnight with friends does not make it foreseeable that she would lie to Cross about skipping school to take an unauthorized out-of-state road trip and drive dangerously during that trip resulting in death and serious injury, especially in light of the fact that Cross only knew Genoa to be a well-behaved teenager with no history of disciplinary problems at home or at school who had followed his direction not to take such a trip on a prior occasion.

Of course, Cross was not with Genoa on the night of the accident and did not have immediate control over her. He believed she was spending the night with Cheyanna and had no reason to believe this was a lie. As a matter of law:

[i]t is not negligent supervision *per se* for parents to fail to monitor their teenager twenty-four hours a day when the parents are not aware of, and have no reason to be aware of, any particular risk necessitating such intensive monitoring. Parents owe no duty to third parties to supervise or control their minor child to prevent the child from harming others unless the parents know, or should know, of the need and opportunity to exercise such

---

[36] Genoa Somersall deposition, p. 106, lines 20-25, p. 107, lines 1-14.

control *and* the parents have the ability to exercise such control. The mere fact that the parents do not have the ability to exercise control is not, in and of itself, proof that the parents violated a duty to control their child to prevent him from harming others."

*Hugenberg*, 249 S.W.3d at 184-85.

While Appellants argue that Cross knew Genoa had engaged in deceit towards him regarding driving with only a permit driver in connection with the wreck of his car, and knew she *might* sneak around in order to use her own vehicle to take unauthorized trips with friends, and he failed to check the mileage on her vehicle, it is not foreseeable that Genoa would in fact skip school, travel across state lines without permission, drive dangerously during such a trip, and be involved in a deadly accident. The evidence fails to show Cross was on notice, or should have been on notice, that Genoa was a dangerous driver. He simply could not monitor this teenager twenty-four hours a day, and her prior behavior was insufficient to put him on notice that she was a foreseeable risk to others because of any incompetent driving by her.

## CONCLUSION

Summary Judgment was proper in this case on claims of liability under the Family Purpose Doctrine, Negligent Entrustment, and KRS 186.590 because there are no genuine issues of material fact that Cross owned, maintained, furnished, or controlled the vehicle involved in the deadly accident. Summary

Judgment was also proper on the Negligent Supervision claim because, as a matter of law, based upon facts known to Cross at the time of the fatal accident, it was not foreseeable that Genoa, a well-behaved 17-year-old with good grades and no disciplinary issues, would skip school with her friends; travel from Harlan, Kentucky, to Columbus, Ohio, then back to Louisville, Kentucky; drive dangerously while doing so; all without the knowledge or permission of any of the parents or guardians; and result in the accident that killed two passengers and seriously injured a third. The Oldham Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEF AND ORAL ARGUMENT FOR APPELLANTS ESTATE OF SELENA GILBERT LEE, BY AND THROUGH MICHELLE MAGGARD AND FRANK LEE, SR. AS CO-ADMINISTRATORS OF THE ESTATE OF SELENA GILBERT LEE:

Russell D. Alred
Harlan, Kentucky

BRIEF AND ORAL ARGUMENT FOR APPELLANTS STEPHANIE RENEA WALKER, CO-ADMINISTRATRIX OF THE ESTATE OF TAMARA RACHELLE MEFFORD; CELESTIAL SHULER, AS CO-GUARDIAN OF C.S., A MINOR; STEVEN A. MEFFORD, CO-ADMINISTRATOR OF THE ESTATE OF TAMARA RACHELLE MEFFORD; AND TONYA SHULER, AS CO-GUARDIAN OF C.S., A MINOR:

Mark Willis
Scott Lisenbee
Harlan, Kentucky

BRIEF AND ORAL ARGUMENT FOR APPELLEE:

Jake A. Thompson
Carrollton, Kentucky